38 A.3d 570

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR CSAB MORTGAGE–BACKED PASS–THROUGH CERTIFICATES, SERIES 2006–3, PLAINTIFF–RESPONDENT, v. MARYSE GUILLAUME AND EMILIO GUILLAUME, DEFENDANTS–APPELLANTS, AND CITY OF EAST ORANGE, DEFENDANT.

Argued November 30, 2011—Decided February 27, 2012.

450

*Rebecca Schore* argued the cause for appellants (*Legal Services of New Jersey,* attorneys; *Ms. Schore, Melville D. Miller, Jr.,* President, *Margaret Lambe Jurow,* and *Engy Abdelkader,* on the briefs).

*Mark S. Melodia* argued the cause for respondent (*Reed Smith,* attorneys; *Mr. Melodia, Diane A. Bettino,* and *Henry F. Reichner,* on the briefs).

*Linda E. Fisher* submitted a brief on behalf of amici curiae Seton Hall University School of Law Center for Social Justice and Center for Responsible Lending (*Seton Hall University School of Law Center for Social Justice,* attorneys; *Ms. Fisher* and *Kyle L. Rosenkrans,* on the brief).

*Brian C. Nicholas* and *Jaime R. Ackerman* submitted a brief on behalf of amicus curiae Mortgage Bankers Association of New Jersey (*Zucker, Goldberg & Ackerman,* attorneys).

*Douglas S. Brierley* submitted a brief on behalf of amicus curiae Federal National Mortgage Association (*Scarinci & Hollenbeck,* attorneys; *Mr. Brierley* and *Frank P. Kapusinski,* on the brief).

*Brian C. Nicholas, Jaime R. Ackerman, Edward W. Kirn, Shari A. Seffer, Michael H. Hanusek, Vladimir V. Palma,* and *Rosemarie Diamond,* submitted a brief on behalf of amicus curiae New Jersey Foreclosure Attorneys (*Zucker, Goldberg & Ackerman, Power Kirn, Fein, Such, Kahn, Shepard,* and *Phelan Hallinan & Schmieg,* attorneys).

*Michael M. Horn* submitted a brief on behalf of amicus curiae New Jersey Bankers Association (*McCarter & English,* attorneys; *Mr. Horn, William P. Higgins, Jr.,* and *Steven A. Beckelman,* of counsel and on the brief).

Justice PATTERSON delivered the opinion of the Court.

In the setting of an unprecedented residential lending crisis in our state, the Court considers the Legislature's foreclosure statutes and federal truth-in-lending law. Seeking relief from a default judgment entered in a foreclosure case, defendants Maryse and Emilio Guillaume attempt to demonstrate excusable neglect and the existence of a meritorious defense, *Rule* 4:50–1(a), that the trial court's judgment is void, *Rule* 4:50–1(d), or that this case presents exceptional circumstances, *Rule* 4:50–1(f). As to the meritorious defenses compelled by *Rule* 4:50–1(a), the Guillaumes

invoke the Fair Foreclosure Act (FFA), *N.J.S.A.* 2A:50–53 to –68, and the Truth in Lending Act (TILA), 15 *U.S.C.* §§ 1601 to 1667f. They contend that plaintiff US Bank National Association (US Bank) violated the FFA by listing the name and address of a loan servicer—rather than the name of the lender itself—on the Notice of Intention to Foreclose (notice of intention) required by *N.J.S.A.* 2A:50–56. They argue that TILA authorized them to rescind their loan by virtue of a $120 overcharge of a recording fee.

The trial court concluded that the Guillaumes had not demonstrated excusable neglect for their failure to defend the foreclosure action. Rejecting the Guillaumes' assertion of a meritorious defense to US Bank's foreclosure claim, the court held that US Bank had substantially complied with the FFA, but directed it to issue a corrected notice of intention listing the lender. It further concluded that the $120 overcharge in a recording fee did not permit rescission of the transaction pursuant to TILA. Accordingly, the trial court denied the Guillaumes' motion to vacate the default judgment.

In a per curiam opinion, an Appellate Division panel affirmed, holding that the Guillaumes had failed to demonstrate excusable neglect or a meritorious defense as required by *Rule* 4:50–1(a), or the existence of exceptional circumstances under *Rule* 4:50–1(f). The panel held that US Bank's original notice of intention, listing the name of the loan servicer rather than the lender, satisfied the purpose of the FFA, and that because the Guillaumes could not tender the balance due on their loan, TILA provided no meritorious defense to US Bank's foreclosure action.

We now affirm, as modified, the Appellate Division's judgment. We concur with the Appellate Division panel that the Guillaumes have failed to demonstrate excusable neglect or a meritorious defense, and that they are therefore not entitled to relief under *Rule* 4:50–1(a). We also agree with the Appellate Division that the Guillaumes have failed to establish a meritorious defense under the FFA. We do not concur with the Appellate Division's determination that US Bank's original notice of intention, listing

the name of the loan servicer rather than the lender, substantially complied with *N.J.S.A.* 2A:50–56(c)(11). We hold that *N.J.S.A.* 2A:50–56(c)(11) requires that foreclosure plaintiffs list on the notice of intention the name and address of the actual lender, in addition to contact information for any loan servicer involved in the mortgage. We further hold that a court adjudicating a foreclosure action in which *N.J.S.A.* 2A:50–56(c)(11) is violated may dismiss the action without prejudice, permit a cure or impose such other remedy as may be appropriate to the specific case, and that the trial court's decision to order US Bank to cure the defect in its notice of intention was a proper exercise of its discretion. To the extent that *Bank of New York v. Laks,* 422 *N.J.Super.* 201, 27 *A.*3d 1222 (App.Div.2011), holds that the only remedy available to a trial court for a violation of *N.J.S.A.* 2A:50–56(c)(11) is dismissal without prejudice, it is overruled.

We affirm the Appellate Division's holding that the Guillaumes' other contentions do not satisfy the requirements of *Rule* 4:50–1. We concur with the Appellate Division panel that because the Guillaumes could not tender the balance due on their loan, there was no abuse of discretion in finding that TILA does not give rise to a meritorious defense to the foreclosure action. We affirm the panel's holding that the Guillaumes' claim that the trial court's judgment was premised upon incompetent evidence is not a foundation for a finding of "exceptional circumstances" under *Rule* 4:50–1(f). We find no basis to accept the Guillaumes' contention—newly raised before this Court—that the default judgment should be vacated under *Rule* 4:50–1(d).

## I.

On December 30, 1992, the Guillaumes and another individual purchased a home at 542 Prospect Street, East Orange, New Jersey, with a fixed-rate purchase money mortgage. In 1999, after the transfer of the third individual's interest in the property to the Guillaumes, they refinanced to a variable rate mortgage. On September 7, 2006, Maryse Guillaume obtained a $210,000

fixed-rate loan from Credit Suisse, with a 6.75% interest rate and a thirty-year term. The Note, signed by Maryse Guillaume on September 7, 2006, was secured by a mortgage on the Guillaumes' home naming Mortgage Electronic Registration Systems Inc. as nominee for Credit Suisse, the mortgagee. The Guillaumes also signed a HUD-1 Settlement Statement, a Uniform Residential Loan Application, and a Federal Truth in Lending Disclosure Statement. The loan proceeds satisfied the Guillaumes' prior mortgage in the amount of $123,189.93, and Maryse Guillaume received $61,719.87 in cash.

On October 1, 2006, Credit Suisse assigned the Guillaumes' mortgage to US Bank through a Pooling and Servicing Agreement. The assignment of the mortgage was executed on July 14, 2008, and recorded on July 31, 2008, with a corrected assignment executed on April 10, 2009, and recorded on April 15, 2009. The Pooling and Service Agreement provided that the servicer of a loan would be responsible for collecting payment, and had the authority to extend payment due dates, waive late payment fees and "effectuate foreclosure" of properties securing affected mortgage loans.

On November 14, 2006, the Guillaumes were informed in writing that America's Servicing Company (ASC) had been assigned responsibility to be the loan servicer for their mortgage. The letter advised that ASC's name would "appear on your monthly statements and other communications related to your mortgage loan." Between December 2006 and March 2008, the Guillaumes sent their mortgage payments to ASC. However, the Guillaumes failed to make their mortgage payment in early April of 2008, and have made no payments at all since that date. On May 13, 2008, having missed two mortgage payments, Maryse Guillaume contacted ASC and identified a housing counselor as her representative with respect to her loan.

On May 28, 2008, ASC delivered a notice of intention dated May 18, 2008, to the Guillaumes, informing them that they had missed two payments totaling $4,091.88, advising them that they could

cure the default by making a payment in the amount of $6,274.02 by June 17, 2008, and providing notice of the lender's intention to file a foreclosure action. The notice of intention urged the Guillaumes to "immediately seek the advice of an attorney(s) of your own choosing concerning this residential mortgage default." It suggested that the Guillaumes communicate with the New Jersey State Bar Association, the county Lawyers Referral Service or the county Legal Services Offices, provided these organizations' telephone numbers, and also identified agencies with housing counseling services. The notice of intention, issued by ASC's "Default Management Department," instructed the Guillaumes to direct mortgage payments to "America's Servicing Co., P.O. Box 1820, Newark, NJ 07101–1820." The notice also identified ASC, with a telephone number, as the entity to contact should the Guillaumes dispute that a default had occurred or the loan servicer's calculation of the payment due. The name and address of the lender, US Bank, did not appear anywhere on the notice of intention.

## II.

This action began on July 15, 2008, when US Bank filed a Foreclosure Complaint in the Superior Court of New Jersey, Chancery Division. The Complaint and an accompanying Summons, informing the Guillaumes that judgment could be entered against them if they failed to file an answer within thirty-five days, were served upon Emilio Guillaume on July 21, 2008. The Complaint included a notice advising the Guillaumes that exercising their rights to dispute the debt or to request documents "does not mean that you are not also required to respond in accordance with the summons attached hereto, that indicates that you have thirty-five (35) days from the time of service in which to file [an] answer with the court."

For several months after the filing of the Complaint, with the assistance of a housing counseling agency, the Guillaumes corresponded with ASC about the possibility of a loan modification to reduce their monthly payment and restore their loan to active

status. However, the Guillaumes did not file an answer or otherwise appear in the foreclosure action. On August 26, 2008, the due date for the answer, US Bank requested a default judgment against the Guillaumes and their codefendant, the City of East Orange, for "failure to plead or otherwise defend" as required by the court rules.

On September 5, 2008, US Bank's foreclosure counsel advised the Guillaumes, in a "Notice Pursuant to Section 6 of the Fair Foreclosure Act," that "US Bank National Association, as Trustee for CSAB Mortgage–Backed Pass–Through Certificates, Series 2006–3, the Plaintiff in the above-captioned matter, is now ready to submit its proof to the Superior Court Foreclosure Unit for entry of a Final Judgment of Foreclosure, relating to the within matter." In contrast to the notice of intention, the September 5, 2008 notice provided the name of the actual lender, to be contacted through ASC. US Bank filed and served its notice of motion for entry of a default judgment on November 11, 2008, advising the Guillaumes that an objection to the motion was required to be in writing and filed with the New Jersey Office of Foreclosure within ten days. The Guillaumes did not respond to US Bank's motion. By letters dated February 5, 2009, and April 9, 2009, ASC advised the Guillaumes that their request for a loan modification had been denied because "[w]e are unable to come to a mutual agreement regarding your request for a workout."

The trial court entered final judgment against the Guillaumes on May 6, 2009, awarding US Bank $215,146.44 plus interest and $2,301.46 in counsel fees, and directing a sheriff's sale of the property to satisfy the debt. On June 24, 2009, the Guillaumes again requested in writing that ASC modify their loan. On July 20, 2009, a Notice of Sheriff's Sale was sent to the Guillaumes. An initial public auction was scheduled for August 11, 2009.

The Guillaumes then retained counsel. On August 31, 2009, their attorney sent a rescission notice to US Bank's counsel. Citing inaccuracies in the Truth In Lending Disclosure Statement provided to the Guillaumes, and overcharges in the recording and

filing fees assessed to the Guillaumes, their counsel advised "that Mr. and Mrs. Guillaume hereby rescind the transaction pursuant to the Federal Truth in Lending Act, 15 *U.S.C.* § 1635, Regulation Z § 226.23," and asserted New Jersey statutory and common law rescission rights. ASC immediately denied the demand for rescission. The sheriff's sale of the Guillaumes' home was then postponed several times.

On September 23, 2009, the trial court granted the Guillaumes' application for the entry of an Order to Show Cause. A November 10, 2009 hearing was held on the Guillaumes' motion to vacate the default judgment. At that hearing, the Guillaumes raised as a defense to the foreclosure action the absence of the lender's name on US Bank's May 18, 2008 notice of intention. Finding that the notice of intention fell short of the statutory standard, and admonishing US Bank to be particularly careful to correct the form of its notice, the trial court directed that an amended notice of intention naming the actual lender be served upon the Guillaumes. The trial court rejected as "draconian" the remedy of dismissal urged by counsel for the Guillaumes, and noted that the service of a corrected notice of intention would delay US Bank's effort to foreclose on the Guillaumes' property. The court found no meritorious defense under the FFA or TILA, and accordingly denied the Guillaumes' motion to vacate the default judgment under *Rule* 4:50–1(a). It further rejected the Guillaumes' contention that US Bank's proofs were deficient under *Rule* 1:6–2 and *Rule* 4:64–2(a) because the photocopy of the Guillaumes' Note submitted to the court was not certified to be a true copy by an attorney who had examined the original document in US Bank's Ohio office.

A revised notice of intention dated November 23, 2009, was then delivered to Maryse Guillaume. This notice set forth the name of the lender, but not its address. In a letter dated December 2, 2009, counsel for the Guillaumes wrote to the trial judge to explain that this revised notice also did not comply with *N.J.S.A.* 2A:50–56(c)(11) because it did not include the address of the lender. Telephonic argument was heard on this issue on July 8, 2010, and

the judge ordered that another revised notice of intention comply-
ing with *N.J.S.A.* 2A:50-56(c)(11) be delivered to the Guillaumes.

A second revised notice of intention dated July 15, 2010, was
delivered to the Guillaumes, but this notice also did not include the
address of the lender, although it did include the name of the
lender. The notice of intention explained the relationship between
the lender and the servicer as follows:

US Bank National Association, As Trustee for CSAB Mortgage Backed Pass-
Through Certificates, Series 2006-3 holds the Mortgage on your property located
at 542 Prospect Street, East Orange, NJ 07017. America Servicing Company is
the servicer for US Bank National Association, As Trustee for CSAB Mortgage
Backed Pass-Through Certificates, Series 2006-3 regarding your mortgage.

Like the original notice of intention, the second revised notice of
intention identified the payment that would be necessary to cure
the default, which was $62,523.64 as of that date, and instructed
the Guillaumes to contact ASC to discuss any dispute with respect
to that amount.

Based on the second failure to include the address of US Bank
in the notice of intention, the Guillaumes then moved to dismiss
the foreclosure action. At a hearing conducted on August 30,
2010, the trial court denied the Guillaumes' motion to vacate the
default judgment and to dismiss the Complaint. The court con-
cluded that the Guillaumes had failed to demonstrate the excusa-
ble neglect necessary to vacate a default judgment. It found that
notwithstanding the "technical omission" on the original notice of
intention, that notice had fulfilled the purpose of the FFA, since it
advised the Guillaumes of the entity that should be contacted to
negotiate a resolution with the lender. The court also found that
the Guillaumes were not in a position to cure the default.

An Appellate Division panel affirmed the trial court's order. It
held that the Guillaumes had established neither excusable neglect
nor a meritorious defense. It concluded that the original notice of
intention had satisfied the purpose of *N.J.S.A.* 2A:50-56(c)(11), by
making the debtor aware of the situation, and who to contact to
either cure the default or raise potential disputes, and how to do
so. Rejecting the Guillaumes' claim that US Bank's TILA viola-

tion satisfied the standard of *Rule* 4:50–1(a), the Appellate Division found that the Guillaumes' inability to tender the balance remaining on their mortgage prevented the remedy of rescission. The panel concluded that US Bank had complied with the evidentiary requirements of *Rule* 4:46–2, and that there were no "exceptional circumstances" meeting the standard of *Rule* 4:50–1(f).

The Guillaumes filed a petition for certification on June 16, 2010. US Bank initially opposed the petition for certification. On August 8, 2010, a different panel of the Appellate Division decided *Laks, supra,* 422 *N.J.Super.* 201, 27 *A.*3d 1222. In *Laks,* the panel held that the failure to identify the lender in a notice of intention as required by *N.J.S.A.* 2A:50–56(c)(11) warranted reversal of the trial court's denial of the homeowner defendants' motion to vacate a judgment of foreclosure. The *Laks* panel further held that when a violation of *N.J.S.A.* 2A:50–56(c)(11) is demonstrated by a defendant homeowner prior to the entry of judgment, the sole remedy is dismissal without prejudice, but concluded that its holding "should not be understood to provide an avenue for setting aside a judgment of foreclosure where subsection (c)(11) was not raised prior to entry of judgment." *Laks, supra,* 422 *N.J.Super.* at 213, 27 *A.*3d 1222. The panel construed the FFA to require the remedy of dismissal in order to protect defendants' "non-waivable rights" to service of a conforming notice of intention, and because this remedy "is consistent with the statutory mandate that a plaintiff in a residential foreclosure action plead compliance with the notice of intention precondition in its complaint." *Id.* at 212, 27 *A.*3d 1222.

Following the Appellate Division's decision in *Laks,* US Bank partially withdrew its opposition to the Guillaumes' petition for certification. This Court granted certification. *US Bank Nat'l Ass'n v. Guillaume,* 208 *N.J.* 380, 30 *A.*3d 317 (2011).

### III.

The Guillaumes challenge the trial court's "sparing" review of their motion to vacate the default judgment, arguing that *Rule*

4:50–1 requires a "liberal" and "indulgent" review. They contend that the trial court abused its discretion in failing to predicate a finding of "excusable neglect" under *Rule* 4:50–1(a) on the Guillaumes' showing that they were confused by US Bank's simultaneous foreclosure proceedings and loan modification discussions.

The Guillaumes proffer two defenses that they contend to be meritorious for the purposes of *Rule* 4:50–1(a). First, they argue that US Bank's failure to identify the lender on the notice of intention violated *N.J.S.A.* 2A:50–56(c)(11), which requires strict compliance. Relying upon *Laks, supra,* 422 *N.J.Super.* 201, 27 *A.*3d 1222, they contend that because the defect is "jurisdictional," no remedy short of dismissal without prejudice satisfies the FFA. Second, the Guillaumes invoke US Bank's finance charge error as a basis for rescission under TILA, 15 *U.S.C.* § 1635(b). They challenge the Appellate Division's conclusion that the remedy of rescission is unavailable to the Guillaumes under TILA because they were not in a position to tender the balance due on the loan, arguing that this finding "is not supported by a scintilla of evidence in the record." The Guillaumes also claim that the default judgment was not premised upon competent evidence because US Bank's attorney did not properly authenticate the copy of the Note submitted to the trial court.

US Bank seeks affirmance of the determination of the trial court and Appellate Division that the Guillaumes have not demonstrated excusable neglect. It defends the adequacy of its original notice of intention dated May 18, 2008, contending that the listing of ASC in lieu of the lender comports with the language and purpose of the FFA. First, US Bank asserts that ASC constitutes a "lender" as defined by the FFA, *N.J.S.A.* 2A:50–55, because it is the agent of the note holder and has been assigned rights ordinarily held by the beneficial owner of a mortgage. Second, US Bank offers the alternative argument that the listing of ASC on the notice of intention substantially complies with *N.J.S.A.* 2A:50–56(c)(11). It asserts that the Legislature did not require strict compliance with the literal terms of the statute, and that identify-

ing ASC instead of US Bank furthered the goals of the statute because ASC was the appropriate party for the Guillaumes to contact with respect to the foreclosure. It also argues that the Guillaumes had no rescission rights pursuant to TILA because they were unable to sustain their burden of demonstrating an ability to tender the balance due.

Amici Curiae Seton Hall Center for Social Justice and Center for Responsible Lending together urge the Court to vacate the default judgment entered against the Guillaumes on the grounds that the notice of intention's omission of the name of the lender, and the TILA violation, constitute meritorious defenses under *Rule* 4:50–1(a). Amici Curiae Mortgage Bankers Association of New Jersey, the New Jersey Bankers Association, the Federal National Mortgage Association and New Jersey Foreclosure Attorneys argue that the Appellate Division's determination should be affirmed, and *Laks, supra,* 422 *N.J.Super.* 201, 27 *A.*3d 1222, rejected, because the listing of the loan servicer on the notice of intention furthers the purpose of the FFA. They also contend that any decision to the contrary should be prospective only, and that the remedy for any violation of *N.J.S.A.* 2A:50–56(c)(11) should be cure rather than dismissal. Amicus Curiae New Jersey Foreclosure Attorneys supports US Bank's contentions and further argues that attorneys retained to prosecute foreclosure actions, who are compelled by *Rules* 4:64–1 and 4:64–2 to execute a Certificate of Diligent Inquiry (CODI), cannot certify to their clients' compliance with the pre-filing notice requirements of the FFA and other laws if those requirements are altered by subsequent case law.

## IV.

The trial court properly applied the standard of *Rule* 4:50–1, which governs an applicant's motion for relief from default when the case has proceeded to judgment. Our Rules prescribe a two-step default process, and there is a significant difference between the burdens imposed at each stage. When nothing more than an

entry of default pursuant to *Rule* 4:43–1 has occurred, relief from that default may be granted on a showing of good cause. *Rule* 4:43–3; Pressler & Verniero, *Current N.J. Court Rules,* comment on *R.* 4:43–3 (2012) (stating that "[t]he required good-cause showing for setting aside an entry of default pursuant to this rule is clearly a less stringent standard than that imposed by *R.* 4:50–1 for setting aside a default judgment").

■ When the matter has proceeded to the second stage and the court has entered a default judgment pursuant to *Rule* 4:43–2, the party seeking to vacate the judgment must meet the standard of *Rule* 4:50–1:

> On motion, with briefs and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and for which by due diligence could not have been discovered in time to move for a new trial under *R.* 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.
>
> [*R.* 4:50–1.]

The rule is " 'designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case.' " *Mancini v. EDS,* 132 *N.J.* 330, 334, 625 *A.*2d 484 (1993) (quoting *Baumann v. Marinaro,* 95 *N.J.* 380, 392, 471 *A.*2d 395 (1984)).

■■ The trial court's determination under the rule warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion. *See DEG, LLC v. Twp. of Fairfield,* 198 *N.J.* 242, 261, 966 *A.*2d 1036 (2009); *Hous. Auth. of Morristown v. Little,* 135 *N.J.* 274, 283, 639 *A.*2d 286 (1994). The Court finds an abuse of discretion when a decision is " 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.' " *Iliadis v. Wal–Mart*

*Stores, Inc.,* 191 *N.J.* 88, 123, 922 *A.*2d 710 (2007) (quoting *Flagg v. Essex Cnty. Prosecutor,* 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002)).

Before the trial court, the Guillaumes relied upon *Rule* 4:50-1(a), requiring a showing of excusable neglect and a meritorious defense. *See Marder v. Realty Constr. Co.,* 84 *N.J.Super.* 313, 318, 202 *A.*2d 175 (App.Div.), *aff'd,* 43 *N.J.* 508, 205 *A.*2d 744 (1964). They also invoked *Rule* 4:50-1(f), which affords relief only when "truly exceptional circumstances are present." *Little, supra,* 135 *N.J.* at 286, 639 *A.*2d 286 (quotation omitted). For the first time in their petition for certification, the Guillaumes also rely upon *Rule* 4:50-1(d), contending that the default judgment entered by the trial court is void.

## V.

Absent a showing of "excusable neglect," the Guillaumes cannot meet the standard of *Rule* 4:50-1(a). "Excusable neglect" may be found when the default was "attributable to an honest mistake that is compatible with due diligence or reasonable prudence." *Mancini, supra,* 132 *N.J.* at 335, 625 *A.*2d 484; *see also Baumann, supra,* 95 *N.J.* at 394, 471 *A.*2d 395 (stating that "mere carelessness or lack of proper diligence on the part of an attorney is ordinarily not sufficient to entitle his clients to relief from an adverse judgment" (quotation omitted)). The Guillaumes claim that they were confused by US Bank's communications to them with respect to a potential loan modification at a time when the foreclosure action was underway. The trial court properly rejected this contention, holding that the Guillaumes were fully informed of the existence of a "court process" requiring a legal response for over a year, and that US Bank's communications with them regarding loan modification did not alter the analysis. Indeed, the Guillaumes were informed in writing that communications with the bank did not obviate the need to retain counsel and file a timely answer to the foreclosure complaint. There is no evidence that US Bank suggested to the Guillaumes that it was unnecessary to respond to the foreclosure action; it expressly

advised the Guillaumes that the foreclosure action could not be ignored. Notices were detailed and informative with respect to the retention of counsel and the necessity of a responsive pleading in the foreclosure case. Before the trial court's entry of default judgment, the Guillaumes were advised that their efforts to secure a loan modification had been unsuccessful. Notwithstanding the repeated notices, the Guillaumes took no action to respond to the foreclosure complaint, and the record reflects no excuse for their inaction.

In short, the Guillaumes have failed to make a showing of excusable neglect and, accordingly, their motion to vacate the default judgment under *Rule* 4:50–1(a) was properly denied by the trial court.

## VI.

To prevail under *Rule* 4:50–1(a), the Guillaumes are further compelled to prove the existence of a "meritorious defense." *Little, supra,* 135 *N.J.* at 284, 639 *A.*2d 286 (stating that defendant seeking to reopen a default judgment must generally show "a meritorious defense is available"). As the court held in *Schulwitz v. Shuster,* 27 *N.J.Super.* 554, 561, 99 *A.*2d 845 (App.Div.1953), "[i]t would create a rather anomalous situation if a judgment were to be vacated on the ground of mistake, accident, surprise or excusable neglect, only to discover later that the defendant had no meritorious defense. The time of the courts, counsel and litigants should not be taken up by such a futile proceeding." Notwithstanding the absence of a showing of excusable neglect, the Court considers the Guillaumes' contention that they have two meritorious defenses to US Bank's foreclosure claim.

## A.

The FFA is invoked by the Guillaumes as the foundation of their first proffered meritorious defense. The Guillaumes contend that the notice of intention violated the FFA because it listed the name of ASC, not the lender. Enacted in 1995, the FFA was

intended to "advance the public policies of the State by giving debtors every opportunity to pay their home mortgages, and thus keep their homes," while ensuring that "lenders will be benefited when debtors cure their defaults and return the residential mortgage loan to performing status." *Statement to Assembly Bill No. 1064,* at 10 (Jan. 24, 1994). The FFA was intended to expedite foreclosure proceedings to bring "New Jersey in line with its neighboring states," thus encouraging financial institutions to increase their lending activity in New Jersey. *Governor's Press Release for Assembly Bill No. 1064,* at 1 (Sept. 6, 1995).

The notice of intention is a central component of the FFA, serving the important legislative objective of providing timely and clear notice to homeowners that immediate action is necessary to forestall foreclosure. *N.J.S.A.* 2A:50–56(a) requires lenders contemplating foreclosure to give defaulting homeowners "notice of such intention at least 30 days in advance of such action as provided in this section." The Legislature required that the notice "be in writing, sent to the debtor by registered or certified mail, return receipt requested, at the debtor's last known address, and, if different, to the address of the property which is the subject of the residential mortgage." *N.J.S.A.* 2A:50–56(b). It is deemed effectuated on the date it is "delivered in person or mailed to" the defaulting homeowner. *Ibid.*

The Legislature expressly defined the contents of the required notice of intention in *N.J.S.A.* 2A:50–56(c), which states that the notice "shall clearly and conspicuously state in a manner calculated to make the debtor aware of the situation" eleven specified categories of information. One of those categories is set forth in *N.J.S.A.* 2A:50–56(c)(11), which requires that the notice of intention include

> the name and address of the lender and the telephone number of a representative of the lender whom the debtor may contact if the debtor disagrees with the lender's assertion that a default has occurred or the correctness of the mortgage lender's calculation of the amount required to cure the default.

[*N.J.S.A.* 2A:50–56(c)(11).]

The FFA provides that absent a signed workout agreement, any waiver by a borrower of his or her rights under the statute is "against public policy, unlawful, and void." *N.J.S.A.* 2A:50–61. The statute does not address the remedy for a violation of the notice of intention requirements set forth in *N.J.S.A.* 2A:50–56(c).[1]

The parties disagree about the meaning of the term "lender," as it appears in *N.J.S.A.* 2A:50–56(c)(11). The Guillaumes contend that US Bank is the "lender" for purposes of the statute, and that its name and address should have been identified in the notice of intention. US Bank argues that ASC, in effect, is the "lender" and that the notice therefore complied with the FFA.

This dispute requires the Court to apply established principles of statutory construction. That inquiry begins with the literal language of the statute, consistent with the Legislature's admonition that its words and phrases "shall be read and construed with their context, and shall, unless inconsistent with the manifest intention of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." *N.J.S.A.* 1:1–1. To the extent possible, the Court must derive its construction from the Legislature's plain language. *State v. Gandhi,* 201 *N.J.* 161, 176–77, 989 *A.*2d 256 (2010); *State v. Smith,* 197 *N.J.* 325, 332–33, 963 *A.*2d 281 (2009); *State v. Froland,* 193 *N.J.* 186, 193–94, 936 *A.*2d 947 (2007); *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). If the language chosen by the Legislature is unambiguous, then the Court's "interpretive process is over." *Gandhi, supra,* 201 *N.J.* at 177, 989 *A.*2d 256 (quotation omitted); *see also DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039 (stating that "[a] court should not resort to extrinsic interpre-

---

[1] The Legislature envisioned that the Attorney General, in consultation with the Commissioner of Banking, would promulgate regulations "necessary to implement [the FFA], including, but not limited to, regulations governing the form and content of notices of intention to foreclose." *N.J.S.A.* 2A:50–68. However, no such regulations were promulgated following enactment of the statute on September 5, 1995, or at any later time.

tative aids when the statutory language is clear and unambiguous, and susceptible to only one interpretation" (quotation omitted)). When a statute defines a term, it generally excludes from that definition any meaning that is not stated. Norman J. Singer & J.D. Shambie Singer, 2A *Sutherland Statutory Construction* § 47:7 (7th ed. 2007); *see also Zorba Contractors, Inc. v. Hous. Auth. of Newark,* 282 *N.J.Super.* 430, 434, 660 *A.*2d 550 (App.Div. 1995) (explaining that a statute is less susceptible to interpretation when it includes "a term whose definition declares what [the] term 'means' ").

In this instance, the intention of the Legislature is clear. For purposes of the FFA, "lender" is defined as "any person, corporation, or other entity which makes or holds a residential mortgage, and any person, corporation or other entity to which such residential mortgage is assigned." *N.J.S.A.* 2A:50–55. That language clearly conveys the Legislature's intent that the homeowner be notified of the identity of the entity that currently holds the mortgage. Notwithstanding ASC's responsibility to collect mortgage payments and negotiate with homeowners on US Bank's behalf, it is not the "maker" or "holder" of the Guillaumes' mortgage, or the assignee of any "lender." By virtue of ASC's role as servicing agent for the lender, inclusion of its contact information in the notice of intention as a "representative of the lender whom the debtor may contact" is consistent with the language and objectives of the FFA. But the Legislature, intending to protect homeowners at risk of foreclosure, has unmistakably directed that a homeowner shall be advised of the exact entity to which he or she owes the balance of the loan.

We disagree with the assertion, advanced by US Bank and Amicus New Jersey Bankers Association, that identification of a loan servicer in lieu of the lender constitutes substantial compliance with the FFA. Even if *N.J.S.A.* 2A:50–56(c)(11) permitted substantial compliance as a substitute for strict compliance, the doctrine would not apply here.

■ The equitable doctrine of substantial compliance requires the Court to consider the following factors:

"(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; (5) a reasonable explanation why there was not a strict compliance with the statute."

[*Galik v. Clara Maass Med. Ctr.*, 167 *N.J.* 341, 353, 771 *A.*2d 1141 (2001) (quoting *Bernstein v. Bd. of Trs. of the Teachers' Pension & Annuity Fund*, 151 *N.J.Super.* 71, 76–77, 376 *A.*2d 563 (App.Div.1977)).]

Here, there is a potential for significant prejudice to the "defending party," the homeowner, by virtue of a bank's failure to identify the lender. For example, a misunderstanding about a lender's identity could prompt a homeowner to make a critical error at a time when he or she is struggling to avert foreclosure. *See Laks, supra,* 422 *N.J.Super.* at 210, 27 *A.*3d 1222. While the loan servicer's name, address and telephone number is significant information that should be part of a notice of intention, the lender's identity is equally important to the Legislature's objective of ensuring that homeowners at risk of foreclosure are thoroughly informed. Accordingly, the first prong of the *Galik* test weighs against a finding of substantial compliance.

The second *Galik* factor similarly warrants rejection of US Bank's substantial compliance argument. This case does not involve an unsuccessful effort to comply with the literal terms of the statute; US Bank made no attempt to identify the Guillaumes' actual lender on the original notice of intention. *See In re Application of Virgo's, Inc.,* 355 *N.J.Super.* 590, 599, 810 *A.*2d 1175 (App.Div.2002) (declining to apply doctrine of substantial compliance when party seeking benefit of doctrine "took absolutely no steps to comply" with statutory requirement at issue).

The third *Galik* factor requires the Court to determine whether US Bank achieved "general compliance" with the FFA. *Galik, supra,* 167 *N.J.* at 353, 771 *A.*2d 1141. The statutory language itself denotes an affirmative mandate; *N.J.S.A.* 2A:50–56(c) directs that the notice of intention "shall" include "clearly and conspicuously" the name of the "lender" on the notice of intention. The Court also looks to the legislative history to determine

whether the Legislature intended that substantial compliance with its mandate would suffice. *See, e.g., Zamel v. Port of N.Y. Auth.,* 56 *N.J.* 1, 6, 264 *A.*2d 201 (1970). Here, the Legislature's objective was to give a homeowner the opportunity to negotiate a resolution of a default, and thereby to retain his or her home. *Statement to Assembly Bill No. 1064, supra,* at 8. That objective requires notice of the identity of the lender, and compels strict compliance with the literal terms of the statute.

Application of the fourth factor of *Galik*—reasonable notice of US Bank's claim, *see Galik, supra,* 167 *N.J.* at 353, 771 *A.*2d 1141—compels the same result. The identity of the lender—the prospective plaintiff—is a crucial aspect of reasonable notice of a foreclosure claim. While the notice of intention informed the Guillaumes that a foreclosure was imminent, it did not advise them of the identity of the party that would ultimately be pled as the plaintiff in the action and would pursue foreclosure. The "reasonable notice" prong of the *Galik* test warrants against a finding of substantial compliance with *N.J.S.A.* 2A:50–56(c).

The fifth and final *Galik* factor—"a reasonable explanation why there is not a strict compliance with the statute," *Galik, supra,* 167 *N.J.* at 353, 771 *A.*2d 1141—is unsatisfied here. Although including accurate information about the identity of a lender in a notice of intention—and amending that information in the event of a change—requires additional effort by mortgage lenders and their servicing agents, there is no showing that strict compliance with *N.J.S.A.* 2A:50–56(c)(11) would be impractical or unduly burdensome. No "reasonable explanation" of US Bank's failure to satisfy the terms of the statute has been offered.

 There is, in short, no basis in the statutory language to conclude that a notice of intention that substitutes the loan servicer for the lender achieves substantial compliance with *N.J.S.A.* 2A:50–56(c)(11).[2] Accordingly, we hold that the FFA

---

[2] Indeed, several courts have held that the FFA mandates strict compliance with its provisions governing the contents of a notice of intention. *See Bank of*

requires that a notice of intention include the name and address of the actual lender, in addition to contact information for any loan servicer who is charged by the lender with the responsibility to accept mortgage payments and/or negotiate a resolution of the dispute between the lender and the homeowner. Thus, the initial notice of intention, dated May 18, 2008, and served upon the Guillaumes on May 28, 2008, did not comply with the FFA. Parties seeking to foreclose must comply with the Legislature's mandate that a notice of intention set forth the name and address of the lender.[3]

■ The Court next turns to the issue of what remedy is appropriate for a violation of *N.J.S.A.* 2A:50–56(c)(11). Notwithstanding its holding that the notice of intention substantially complied with the FFA, which was affirmed by the Appellate Division, the trial court required US Bank to prepare an amended notice of intention. In the wake of *Laks, supra,* 422 *N.J.Super.* 201, 27 *A.*3d 1222, there is a conflict in the case law with respect to the remedy for a violation of *N.J.S.A.* 2A:50–56(c)(11). We hold that dismissal without prejudice is not the exclusive remedy for the service of a notice of intention that does not satisfy *N.J.S.A.*

---

*N.Y. Mellon v. Elghossain,* 419 *N.J.Super.* 336, 340, 16 *A.*3d 1132 (Ch.Div.2010); *EMC Mortgage Corp. v. Chaudhri,* 400 *N.J.Super.* 126, 138, 946 *A.*2d 578 (App.Div.2008); *Cho Hung Bank v. Kim,* 361 *N.J.Super.* 331, 345–46, 825 *A.*2d 566 (App.Div.2003).

3 US Bank argues that the Court's determination that a notice of intention which does not identify the lender violates *N.J.S.A.* 2A:50–56(c)(11) should be prospective only. Unless a new rule of law is at issue, the Court need not engage in retroactivity analysis. *State v. Feal,* 194 *N.J.* 293, 307–08, 944 *A.*2d 599 (2008); *State v. Colbert,* 190 *N.J.* 14, 22–23, 918 *A.*2d 14 (2007). A new rule of law, triggering retroactivity analysis, exists "if there is a 'sudden and generally unanticipated repudiation of a long-standing practice.' " *Feal, supra,* 194 *N.J.* at 308, 944 *A.*2d 599 (quoting *State v. Purnell,* 161 *N.J.* 44, 53, 735 *A.*2d 513 (1999)). No such repudiation of a long-standing practice occurs here. The Court applies the plain language of a seventeen-year-old statute to require the identification of the lender on a notice of intention served in advance of a foreclosure action. Accordingly, our decision is not limited to prospective application.

2A:50–56(c)(11). A trial court adjudicating a foreclosure complaint in which the notice of intention does not comply with *N.J.S.A.* 2A:50–56(c)(11) may dismiss the action without prejudice, order the service of a corrected notice, or impose another remedy appropriate to the circumstances of the case.

■ Under the FFA, service of a notice of intention under *N.J.S.A.* 2A:50–56(c) must be effected thirty days "before any residential mortgage lender may . . . commence any foreclosure or other legal action to take possession of the residential property which is the subject of the mortgage." *N.J.S.A.* 2A:50–56(a). The Legislature did not expressly require dismissal, or otherwise prescribe a remedy, in the event that a notice of intention is timely served but is noncompliant with one or more of the eleven subsections set forth in *N.J.S.A.* 2A:50–56(c). Courts of equity have long been charged with the responsibility to fashion equitable remedies that address the unique setting of each case:

> Equitable remedies "are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties."
>
> [*Sears, Roebuck & Co. v. Camp,* 124 *N.J.Eq.* 403, 411–12, 1 *A.2d* 425 (E. & A.1938) (quoting John N. Pomeroy, *Equity Jurisprudence* § 109 (4th ed. 1918)).]

Absent legislative direction with respect to a remedy, New Jersey courts retain discretion "to fashion equitable remedies," which are "valuable because they allow relief to be fashioned directly to redress the statutory violations shown." *Brenner v. Berkowitz,* 134 *N.J.* 488, 514, 634 *A.2d* 1019 (1993); *see also Marioni v. Roxy Garments Delivery Co.,* 417 *N.J.Super.* 269, 275, 9 *A.3d* 607 (App.Div.2010) ("In fashioning relief, the Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case.").

Indeed, in *Sroczynski v. Milek,* 197 *N.J.* 36, 45, 961 *A.2d* 704 (2008), this Court fashioned a case-specific remedy for a technical violation of a statutory notice requirement. *Sroczynski* arose from a workers' compensation insurer's decision to substitute

electronic notice of its policy cancellation for the notice by registered mail mandated by *N.J.S.A.* 34:15–81, in reliance on "confusing advice" from the New Jersey Compensation Rating and Inspection Bureau. *Sroczynski, supra*, 197 *N.J.* at 44, 961 *A.*2d 704. The Court rejected the insurer's contention that the electronic notice constituted substantial compliance with the statute, and its assertion that the statutory requirements should be enforced only prospectively. *Id.* at 44–45, 961 *A.*2d 704. Holding that only insureds who had challenged the adequacy of notice could be granted relief from nonconforming cancellations, the Court noted:

That outcome is not perfect, but it rewards those who pursued their legal options; leaves those who waived a challenge with the results of their waiver; and does not throw into chaos an industry that adopted a mistaken plan of action in good faith reliance on official misinformation.

[*Id.* at 45, 961 *A.*2d 704.]

Our courts previously have fashioned case-specific equitable remedies for violations of the notice of intention requirements set forth in *N.J.S.A.* 2A:50–56(c). Some courts have favored dismissal of the foreclosure action without prejudice as a remedy for notice of intention violations. *See Bank of N.Y. Mellon v. Elghossain,* 419 *N.J.Super.* 336, 337, 16 *A.*3d 1132 (Ch.Div.2010); *EMC Mortgage Corp. v. Chaudhri,* 400 *N.J.Super.* 126, 138–39, 946 *A.*2d 578 (App.Div.2008) (reversing grant of summary judgment in favor of homeowner and reinstating mortgage lender's foreclosure complaint, but endorsing dismissal without prejudice as appropriate remedy for failure to serve notice of intention as required by *N.J.S.A.* 2A:50–56). Other courts have held that the service of a corrected notice of intention during the pendency of a foreclosure action cures the statutory violation. *See Cho Hung Bank v. Kim,* 361 *N.J.Super.* 331, 346–47, 825 *A.*2d 566 (App.Div.2003) (holding that new notice of intention containing "all the information required by *N.J.S.A.* 2A:50–56," should be served upon homeowner defendants); *GE Capital Mortgage Servs., Inc. v. Weisman,* 339 *N.J.Super.* 590, 595, 773 *A.*2d 122 (Ch.Div.2000) (requiring plaintiff to forward, within ten days, "a new notice of intention setting forth the information required by the FFA"). Depending upon the circumstances of a given case, these alternative remedies, and

other remedies that may be fashioned by our courts of equity, may appropriately balance the interests of lenders and homeowners facing foreclosure.

The Appellate Division panel deciding *Laks* concluded that dismissal without prejudice was the exclusive remedy for a violation of *N.J.S.A.* 2A:50–56(c)(11), setting forth two reasons for this decision. *Laks, supra,* 422 *N.J.Super.* at 212, 27 *A.*3d 1222. First, the panel concluded that since the FFA entitles a residential borrower to service of a "conforming notice of intention" before foreclosure is commenced, a cure of a defective notice of intention within thirty days "may well affect the debtor's obligation to pay counsel fees and costs." *Ibid.* (citing *N.J.S.A.* 2A:50–56(a), –56(c)(7), –57(b)(3)).

The FFA requires debtors seeking to cure a default to pay "court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey." *N.J.S.A.* 2A:50–57(b)(3). However, that statutory authority does not limit the remedies available for a violation of *N.J.S.A.* 2A:50–56(c)(11) to a dismissal. A trial court that permits a foreclosure plaintiff to cure a defective notice of intention has the discretion to reduce the fees and costs owed by the homeowner under *N.J.S.A.* 2A:50–57(b)(3) to adjust for the lender's service of a noncompliant notice of intention. *See, e.g., GE Capital Mortgage Servs., supra,* 339 *N.J.Super.* at 595, 773 *A.*2d 122 (ordering that corrected notice of intention "shall not contain any fees or costs associated with the foreclosure action, but only those fees and costs which would have been due had no foreclosure been commenced"). The trial court's responsibility to consider the impact of a violation of *N.J.S.A.* 2A:50–56(c)(11) on the attorneys' fees and costs owed by the homeowner does not limit that court's choice of remedy to dismissal alone.

Second, the Appellate Division panel deciding *Laks* held that "the remedy of dismissal without prejudice is consistent with the statutory mandate that a plaintiff in a residential foreclosure action plead compliance with the notice of intention precondition in

its complaint." 422 *N.J.Super.* at 212, 27 *A.*3d 1222 (citing *N.J.S.A.* 2A:50–56(f); *Rule* 4:64–1(b)(13)). This construction of *N.J.S.A.* 2A:50–56(f) is unsupported by the plain language of the statute. In the eleven subsections of *N.J.S.A.* 2A:50–56(c), the Legislature listed numerous categories of information to be included in the notice of intention. Had the Legislature intended that a foreclosure action be dismissed whenever a timely served notice omitted even a single item listed in *N.J.S.A.* 2A:50–56(c), it would have so stated.[4]

■ Accordingly, the Court overrules the holding of *Laks, supra,* 422 *N.J.Super.* 201, 27 *A.*3d 1222, barring courts of equity from imposing remedies other than dismissal without prejudice in the event of a violation of *N.J.S.A.* 2A:50–56(c)(11). In determining an appropriate remedy for a violation of *N.J.S.A.* 2A:50–56(c)(11), trial courts should consider the express purpose of the provision: to provide notice that makes "the debtor aware of the situation," and to enable the homeowner to attempt to cure the default. *N.J.S.A.* 2A:50–56(c); *Statement to Assembly Bill No. 1064, supra,* at 8. Accordingly, a trial court fashioning an equitable remedy for a violation of *N.J.S.A.* 2A:50–56(c)(11) should consider the impact of the defect in the notice of intention upon the homeowner's information about the status of the loan, and on his or her opportunity to cure the default.

---

4 Urging the Court to adopt the reasoning of *Laks,* the Guillaumes rely upon cases construing the Anti-Eviction Act (AEA), *N.J.S.A.* 2A:18–61.1 to –61.12, for the proposition that omission of the name and address of the lender from the notice of intention violates a "jurisdictional precondition" and renders the judgment void. In the AEA, the Legislature provided that "[n]o judgment of possession shall be entered for any premises covered [by the AEA] . . . unless the landlord has made written demand and given written notice for delivery of possession of the premises." *N.J.S.A.* 2A:18–61.2. No analogous language appears in the FFA. *N.J.S.A.* 2A:50–56. In addition, if the AEA is violated, the defendant tenant may well lack notice of an imminent legal action. The same cannot be said of an omission of one category of information required by *N.J.S.A.* 2A:50–56(c) in a notice of intention to foreclose. Given the distinctions in language and purpose between the AEA and the FFA, case law limiting the remedies available under the AEA does not govern this case.

These considerations animated the trial court's choice of a remedy here. The court noted that a lender's failure to serve a notice of intention, or to identify a contact person for the home-owner to call, would be more significant than the omission of the lender's name from the notice of intention. Given the Guillaumes' thorough familiarity with the status of their mortgage—reflected in their consultations with a professional adviser and active loan modification negotiations with ASC—the trial court's remedy of a cure constituted a proper exercise of its discretion.[5]

The FFA does not provide a "meritorious defense" to this action within the meaning of *Rule* 4:50–1(a).

## B.

The Guillaumes assert that they have a second "meritorious defense" to the foreclosure action, based upon TILA, 15 *U.S.C.* §§ 1601 to 1667f. They contend that the original lender, Credit Suisse, violated TILA because it overcharged the Guillaumes $120 in calculating the recording fees at the time of their 2006 closing. The Guillaumes contend that they are entitled to the remedy of rescission under 15 *U.S.C.* § 1635, as stated in a rescission notice sent to US Bank on August 31, 2009.

In enacting TILA in 1968, Congress stated its objectives: that the statute would "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit," and "protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 *U.S.C.* § 1601(a). TILA requires that consumers be provided "material

---

[5] We note that the first and second corrected notices of intention included the name, but not the address, of the lender, as well as detailed contact information for ASC. Under the terms of *N.J.S.A.* 2A:50–56(c)(11), the trial court should have ensured that US Bank complied with its order that the lender's address be included on the second corrected notice of intention. However, given the procedural posture of this case, the Guillaumes cannot prevail in their request to vacate the default judgment under *Rule* 4:50–1(a).

disclosures," *see* 15 *U.S.C.* § 1635(a), which are defined to include finance charges, 15 *U.S.C.* § 1602(u). The statute also provides for the remedy of rescission. "Rescission essentially restores the status quo ante; the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests." *McKenna v. First Horizon Home Loan Corp.,* 475 *F.*3d 418, 421 (1st Cir.2007) (citing 15 *U.S.C.* § 1635(b)).

The procedure for rescission is set forth in 12 *C.F.R.* § 226.23(a)(3), known as "Regulation Z." Regulation Z includes special rules in the event that the consumer's principal dwelling is subject to foreclosure. 12 *C.F.R.* § 226.23(a)(1). In that event, "the finance charge and other disclosures affected by the finance charge ... shall be considered accurate for purposes of this section" if the disclosed finance charge "is understated by no more than $35." 12 *C.F.R.* §§ 226.23(h)(2), (h)(2)(i). Thus, in the context of a foreclosure, the $120 overcharge alleged by the Guillaumes would trigger the application of TILA.

TILA sets forth a procedure for the homeowner's tender of the property that he or she has received from the lender. 15 *U.S.C.* § 1635(b). Although the statutory language calls for rescission by the lender prior to the homeowner's tender of the balance of the loan, *ibid.,* federal courts have held that TILA "need not be interpreted literally as always requiring the creditor to remove its security interest prior to the borrower's tender of proceeds," *Yamamoto v. Bank of N.Y.,* 329 *F.*3d 1167, 1171 (9th Cir.2003). Courts adjudicating TILA claims have discretion to deny rescission if the homeowner cannot tender the property that he or she has received from the lender. *See Am. Mortgage Network, Inc. v. Shelton,* 486 *F.*3d 815, 821 (4th Cir.2007) (holding that "[o]nce the trial judge in this case determined that the Sheltons were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate"); *Yamamoto, supra,* 329 *F.*3d at 1172 n. 5 (noting authority holding that "rescission may be conditioned on the borrower's repayment of loan proceeds"); *Williams v. Home-*

*stake Mortgage Co.*, 968 *F*.2d 1137, 1142 (11th Cir.1992) (stating, in context of rescission under TILA, that courts "should consider traditional equitable notions, including ... whether [the borrower] has the ability to repay the principal amount"); *Fed. Deposit Ins. Corp. v. Hughes Dev. Co.*, 938 *F*.2d 889, 890 (8th Cir.1991) (stating that TILA gives "courts discretion to ... condition[ ] rescissions upon the debtor's prior return of the principal"); *Brown v. Nat'l Permanent Fed. Sav. & Loan Ass'n*, 683 *F*.2d 444, 447 (D.C.Cir. 1982) (holding that "a court may condition the granting of rescission upon plaintiff's repayment of the principal amount of the loan to the creditor" (quotation omitted)); *Rudisell v. Fifth Third Bank*, 622 *F*.2d 243, 254 (6th Cir.1980) (holding that "[s]ince rescission is an equitable remedy, the court may condition the return of monies to the debtor upon the return of property to the creditor"); *Powers v. Sims & Levin*, 542 *F*.2d 1216, 1221 (4th Cir.1976) (holding that "surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers"); *see also Egipciaco Ruiz v. R&G Financial Corp.*, 383 *F.Supp.*2d 318, 322 (D.P.R. 2005) (conditioning rescission on tender of loan in TILA violation case); *Mitchell v. Sec. Inv. Corp. of Palm Beaches*, 464 *F.Supp.* 650, 652 (S.D.Fla.1979) (same).

██ In this case, the trial court properly denied the remedy of rescission sought by the Guillaumes. In their notice of rescission dated August 31, 2009, the Guillaumes contended that they were entitled to rescind the transaction "because required material disclosures were not provided or were provided incorrectly." However, the Guillaumes declined to tender the balance of their loan in conjunction with their demand for rescission. Indeed, given the Guillaumes' inability to make a single mortgage payment after March 2008, the record provides no support for the contention that the Guillaumes were in a position to tender the balance due. Accordingly, we concur with the Appellate Division panel's

conclusion that a foreclosure court has the discretion to deny rescission under TILA if the defendant cannot tender the balance of his or her loan. As the Appellate Division noted, it was not an abuse of discretion to deny the Guillaumes' rescission request because they are unable to tender the balance due on their mortgage. TILA does not provide a "meritorious defense" to the foreclosure action.

The Guillaumes have not met their burden to demonstrate either excusable neglect or a meritorious defense within the meaning of *Rule* 4:50–1(a). They have not presented grounds to vacate the default judgment under *Rule* 4:50–1(a).

## VII.

The Guillaumes argue, in the alternative, that the trial court's default judgment should be vacated under *Rule* 4:50–1(d) or (f). Neither provision justifies the relief sought here.

The Guillaumes contend that the default judgment entered against them should be declared void under *Rule* 4:50–1(d) because US Bank failed to comply with the FFA. Because the Guillaumes did not raise their argument under *Rule* 4:50–1(d) in the trial court or the Appellate Division, we need not consider it. *See Nieder v. Royal Indem. Ins. Co.*, 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973) (stating that "our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest" (quotation omitted)).

In any event, we find no basis to declare the default judgment void under *Rule* 4:50–1(d). As discussed above, the omission of information required by *N.J.S.A.* 2A:50–56(c)(11) from a properly served notice of intention does not deprive the court of jurisdiction to consider a foreclosure action. In such a case, the trial court determines an appropriate remedy. That occurred in

this case, and the default judgment entered by the trial court is not void by virtue of US Bank's violation of *N.J.S.A.* 2A:50–56(c)(11).

Finally, the Guillaumes invoke *Rule* 4:50–1(f), which permits courts to vacate judgments for "any other reason justifying relief from the operation of the judgment or order." As this Court held in *Housing Authority of Morristown v. Little,* "[b]ecause of the importance that we attach to the finality of judgments, relief under *Rule* 4:50–1(f) is available only when 'truly exceptional circumstances are present.'" 135 *N.J.* at 286, 639 *A.*2d 286 (quoting *Marinaro, supra,* 95 *N.J.* at 395, 471 *A.*2d 395). In such "exceptional circumstances," *Rule* 4:50–1(f) is "as expansive as the need to achieve equity and justice." *Court Inv. Co. v. Perillo,* 48 *N.J.* 334, 341, 225 *A.*2d 352 (1966). The rule is limited to "situations in which, were it not applied, a grave injustice would occur." *Little, supra,* 135 *N.J.* at 289, 639 *A.*2d 286.

This case presents no such circumstances. The Guillaumes' argument under *Rule* 4:50–1(f) is predicated on allegedly incompetent proof presented by US Bank to the trial court, before which the Guillaumes declined to appear or to be represented prior to the entry of default judgment.[6] As the Appellate Division panel properly concluded, US Bank's submission of a copy of the original Note, supported by a certification of its counsel, complied with the governing rule then in effect, *Rule* 4:64–2, before it was amended on June 9, 2011. That rule did not require an attorney for a foreclosure plaintiff to certify that he or she had personally compared the original Note with the copy submitted to the court. The current version of *Rule* 4:64–2 clarifies that an attorney's

---

[6] In addition to their contention about the authenticity of the copy of the Note submitted to the trial court, the Guillaumes assert for the first time that the Certificate of Amount Due submitted by US Bank to the trial court represented incompetent evidence. Given the Guillaumes' failure to raise this issue in the trial court either before or after the entry of default judgment, or in the Appellate Division, this argument is not properly before the Court. *See Cornblatt v. Barow,* 153 *N.J.* 218, 230, 708 *A.*2d 401 (1998).

obligation is to confer with an employee or employees of the plaintiff or its mortgage loan servicer who has authenticated the proofs submitted, not to personally inspect original documents and compare them to the copies filed with the court. *Rule* 4:64–2(d).[7] There are, in short, no "exceptional circumstances" that would justify an order under *Rule* 4:50–1(f) vacating default judgment.

## VIII.

The Legislature's objective to ensure fair and effective foreclosure proceedings depends upon the careful oversight of our courts of equity and the active participation of lenders and homeowners. In this case, the Guillaumes chose not to appear in the foreclosure proceeding, and the result was a default judgment. The trial court properly determined that *Rule* 4:50–1 does not warrant an order vacating the default judgment.

The judgment of the Appellate Division is affirmed as modified.

*For affirmance as modified*—Justices LONG, LaVECCHIA, ALBIN, HOENS and PATTERSON—5.

---

[7] Pursuant to 2010 and 2011 amendments to *Rules* 4:64–1 and 4:64–2, before filing a foreclosure action, an attorney for a foreclosure plaintiff is required to execute a Certification of Diligent Inquiry (CODI) confirming that the attorney has communicated with an employee of the plaintiff or its loan servicer and confirmed the accuracy of the Note and other foreclosure documents. Pressler & Verniero, *supra*, comment 1 on *R.* 4:64–1 and comment 1 on *R.* 4:64–2. Attorneys are required to certify that they have confirmed with the plaintiff or its servicer the plaintiff's compliance "with the pre-filing notice requirements of the FFA." *R.* 4:64–1(b)(13). US Bank and Amicus New Jersey Foreclosure Attorneys argue that by virtue of these amendments and the Appellate Division's holding in *Laks*, attorneys for foreclosure plaintiffs are not in a position to prepare the required CODI because of uncertainty about potential changes in judicial construction of the FFA's notice requirements. While the CODI requirement is not before the Court, we note that *Rule* 4:64–1 and *Rule* 4:64–2 are not intended to impose upon foreclosure attorneys duties that are not imposed upon other attorneys filing pleadings in conformance with *Rule* 1:4–8(a). The affidavit or certification of diligent inquiry required by *Rule* 4:64–1 and *Rule* 4:64-2 reflects the attorney's reasonable, good faith compliance with the law, as it exists at the time of the document's execution.

*Not Participating*—Chief Justice RABNER and Judge WEFING (temporarily assigned)—2.

*Opposed*—None.