**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2217-14T2

NATIONSTAR MORTGAGE, LLC,

    Plaintiff-Respondent,

v.

FARAH YUCEYUKSEL DONTAS,

    Defendant-Appellant,

and

FARAH YUCEYUKSEL DONTAS, her heirs, devisees
and personal representatives, and her, his,
their or any of their successors in right, title
and interest; ERKAN S. YUCEYUKSEL, his heirs,
devisees and personal representatives, and his,
her, their or any of their successors in right,
title and interest; MRS. ERKAN S. YUCEYUKSEL;
TOWNSHIP OF PARSIPPANY-TROY HILLS; and PNC BANK,

    Defendants.

_____

        Submitted January 9, 2017 — Decided  September 6, 2017

        Before Judges Nugent and Currier.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Morris County, Docket No.
        F-47496-09.

        Joseph A. Chang & Associates, LLC, attorneys
        for appellant (Mr. Chang, of counsel and on
        the brief; Jeffrey Zajac, on the brief).

Ballard Spahr, LLP, attorneys for respondent (Martin C. Bryce, Jr. and William J. DeSantis, on the brief).

PER CURIAM

This is a residential mortgage foreclosure action. Defendant Farah Yucekyuksel Dontas appeals from orders denying her motion to vacate a default and entering the final foreclosure judgment. For the reasons that follow, we affirm.

In 2001, defendant purchased her Parsippany home and executed an adjustable rate mortgage with ten percent interest. Four years later, on December 7, 2005, she refinanced, executed a note to Lehman Brothers Bank, FSB, and executed a thirty-year fixed rate mortgage with six percent interest. The mortgagee was Mortgage Electronic Registration System, Inc. ("MERS"), as nominee for Lehman Brothers Bank.[1] According to defendant, her mortgage broker — referred by the loan officer from whom defendant obtained the original loan — assured defendant refinancing was her "best option." Defendant also asserts she obtained the refinancing without providing any documentation. Defendant acknowledges she received paperwork for the refinancing, but denies she was notified

---

[1] The mortgage was duly recorded in the Morris County Clerk's Office.

of her right to reject the loan within three days of completing the paperwork.

Defendant defaulted on the loan on March 1, 2009. Thereafter, she contacted Aurora Loan Services, LLC ("Aurora") to inquire about a mortgage modification under the Federal Home Affordable Modification Program ("HAMP").

On August 24, 2009, MERS assigned defendant's mortgage to Aurora. Aurora filed a foreclosure complaint on August 31, 2009, alleging defendant had been in default since April 1, 2009. When defendant failed to answer or otherwise plead to the complaint, Aurora filed a request and certification of default on April 8, 2010. Aurora mailed a copy of the request and certification of default to defendant four days before filing it.

Thereafter, Aurora placed defendant on two consecutive six-month trial payment plans for mortgage modification, but ultimately denied her request for permanent modification, claiming she submitted deficient documents. Defendant maintains she paid Aurora during each trial program, from April 2010 through June 2011.

On June 25, 2012, Aurora assigned defendant's mortgage to Nationstar Mortgage ("Nationstar"). Neither party took any further action until May 3, 2013, when defendant filed a motion

to vacate the entry of default and requested leave to file an answer out of time.

On June 21, 2013, the court held oral argument and determined defendant received notice of Aurora's intent to foreclose, Aurora had no obligation to grant defendant a mortgage modification, and Aurora held the note at the time it filed the foreclosure action. Accordingly, the court denied defendant's motion on the basis that she lacked "any type of real meritorious defense." The court finalized its decision in an order.

On January 16, 2014, the court entered an order substituting Nationstar as plaintiff. Nationstar filed a notice of motion for final judgment on November 5, 2014, and the court entered a final judgment of foreclosure on December 8, 2014, from which defendant now appeals.

On appeal, defendant argues the trial court erred in denying her motion to vacate the default because her conduct was not contumacious and she "possessed a meritorious defense worthy of judicial determination." The primary dispute on appeal is whether defendant possessed a meritorious defense.

Defendant contends she possessed several meritorious defenses. First, she contends she had a viable claim under the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2 to -204, based on a theory of predatory lending. Next, she asserts violations of

HAMP, 12 U.S.C. § 5201-5261 (2008), can constitute evidence supporting a CFA claim. She also asserts plaintiff or its predecessor engaged in the practice of dual tracking by simultaneously pursuing both a loan modification and foreclosure. Lastly, defendant argues Aurora violated the CFA while defendant was trying to obtain a mortgage modification by continually insisting defendant provide documents she previously provided and by claiming her application was incomplete. According to defendant, Aurora giving her a "run-around" supports a CFA claim.

In addition to her CFA contentions, defendant claims the complaint must be dismissed because "plaintiff . . . cannot produce evidence of ownership or control of the note" and therefore lacks standing to foreclose. Lastly, defendant argues the Chancery Division's denial of her motion to vacate the default was not supported by the record, and the motion should have been granted in any event because defendant's conduct was not contumacious.

Rule 4:43-3 authorizes a court to set aside an entry of default "[f]or good cause shown." "[A]n application to vacate default 'should be viewed with great liberality and every reasonable ground for indulgence is tolerated to the end that a just result is reached.'" N.J. Div. of Youth and Family Servs. v. P.W.R., 410 N.J. Super. 501, 508 (App. Div. 2009) (citations omitted), rev'd on other grounds, 205 N.J. 17 (2011). The standard

for setting aside an entry of default is less stringent than the standard for setting aside a default judgment. US Bank Nat. Ass'n v. Guillaume, 209 N.J. 449, 466-67 (2012) (citation omitted).

A party seeking to set aside an entry of default may establish good cause by demonstrating "the presence of a meritorious defense worthy of judicial determination . . . and the absence of any contumacious conduct." O'Connor v. Altus, 67 N.J. 106, 129 (1975). "[T]he showing of a meritorious defense is a traditional element necessary for setting aside both a default and a default judgment. . . ." Pressler & Verniero, Current N.J. Court Rules, comment on R. 4:43-3 (2017). That element is required because, like a motion to vacate a default judgment, when a party has no meritorious defense, "[t]he time of the courts, counsel and litigants should not be taken up by such a futile proceeding." Guillaume, supra, 209 N.J. at 469 (quoting Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953)). We review the denial of a motion to vacate default under an abuse of discretion standard. Cf. id. at 467.

In the case now before us, defendant attempted to demonstrate good cause by establishing she had a meritorious defense and was not culpable of contumacious conduct. Having considered her arguments in light of the record and applicable legal principles, we conclude the trial court did not abuse its discretion in denying her motion.

Defendant argues her situation presents a case of predatory lending, which violates the CFA. Predatory lending is:

> a mismatch between the needs and capacity of the borrower . . . . In essence, the loan does not fit the borrower, either because the borrower's underlying needs for the loan are not being met or the terms of the loan are so disadvantageous to that particular borrower that there is little likelihood that the borrower has the capacity to repay the loan.
>
> [Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 267 (App. Div. 2001) (alteration in original) (citation omitted).]

Predatory lenders "target certain populations for onerous credit terms" and

> take advantage of borrowers due to their lack of sophistication in the lending market, . . . their lack of perceived options for the loan . . ., or due to deceptive practices engaged in by the lender that mislead or fail to inform the borrower[s] of the real terms and conditions of the loan.
>
> [Id. at 268 (citation omitted).]

Here, though defendant earned an adjusted gross income of only $27,278, she received a $306,000 loan from Lehman Brothers, who did not request or review any documentation beforehand. Defendant argues the lender extended the note "with reckless unconcern as to [defendant's] ability to pay, . . . and by extension, [Nationstar] committed an unconscionable commercial practice."

Although it appears defendant did lack the capacity to repay the loan, Nationstar is not the original lender, but rather became the note and mortgage holder upon an assignment. Assuming for purposes of this discussion that Lehman Brothers engaged in an actionable predatory lending practice, defendant fails to explain how Nationstar could be held accountable for Lehman Brothers' wrongs. Defendant has neither claimed nor established either that Nationstar was Lehman Brothers' agent or that Nationstar was in some other way vicariously liable for Lehman Brothers' actions. More significantly, defendant has cited no legal authority to support such a proposition. In other words, defendant has not established a meritorious defense against Nationstar.

Defendant next contends violations of HAMP "constitute[] evidence that can be utilized to support a CFA claim." In that regard, defendant asserts her:

> Two Period Plan ("TPP") agreements were marred by the bad faith conduct of Aurora, which continually requested documents already provided, falsely [claimed] it lacked materials actually in its possession, [failed] to implement adequate procedures and systems to respond to inquiries and complaints, and . . . [prolonged] and [delayed] its extension of offers for a permanent loan modification.

Defendant, however, does not support her contention with facts or evidence from the record. She concedes these shortcomings by admitting "[t]he facts relating to the two HAMP TPPs [were] not

fully documented below. However, given the chance to file[] an [a]nswer to the [c]omplaint and conduct discovery, the violations under HAMP can be outlined." This assertion by defendant overlooks her burden of establishing an affirmative defense to the foreclosure action. Unsupported conclusory allegations are inadequate to carry this burden.

Defendant's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). We add only these comments. Defendant did not raise before the trial court her argument here that the practice of "dual tracking" — "initiating foreclosure proceedings while also negotiating a mortgage modification," U.S. Bank Nat. Ass'n v. Curcio, 444 N.J. Super. 94, 113 (App. Div. 2016) (citation omitted) — constituted a defense to the foreclosure action. We thus decline to consider it. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Defendant's "standing" argument — "given the complications presented by the involvement of [MERS] and the fact that the [p]laintiff represents the third mortgagee in this matter . . . there would certainly be issues of fact relating to the ownership of both the note and mortgage documents" — is an engagement in speculation, not the establishment of an affirmative defense.

Based on the record before us, we are unable to conclude the trial court abused its discretion when it denied defendant's motion

to vacate the default.  Defendant failed to establish an affirmative defense, "a traditional element necessary for setting aside both a default and a default judgment."  Pressler & Verniero, _supra_, comment on R. 4:43-3.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION