```
┌─────────────────────────────────────────────────────────┐
│              NOT FOR PUBLICATION WITHOUT THE              │
│            APPROVAL OF THE APPELLATE DIVISION             │
│                                                           │
│  This opinion shall not "constitute precedent or be       │
│  binding upon any court."                                 │
│  Although it is posted on the internet, this opinion is   │
│  binding only on the                                      │
│  parties in the case and its use in other cases is        │
│  limited. R.1:36-3.                                       │
└─────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1543-15T4

DANIELLE TIRENDI,

    Plaintiff-Respondent,

v.

THOMAS J. TIRENDI,

    Defendant-Appellant.

_____

          Argued April 4, 2017 — Decided September 18, 2017

          Before Judges Koblitz and Sumners.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Hunterdon
          County, Docket No. FM-10-0320-14.

          Bonnie C. Frost argued the cause for appellant
          (Einhorn, Harris, Ascher, Barbarito & Frost,
          PC, attorneys; Ms. Frost, on the briefs).

          Maria Patricia Imbalzano argued the cause for
          respondent (Stark & Stark, attorneys; Ms.
          Imbalzano, of counsel and on the brief).

    The opinion of the court was delivered by

SUMNERS, J.A.D.

Defendant seeks to vacate a judgment of divorce (JOD) on the grounds that it incorporates an unenforceable marital separation agreement (MSA) that is a mid-marriage agreement he was fraudulently induced to sign, and is unconscionable, inequitable and unjust. Defendant also seeks a plenary hearing to modify custody and parenting time set forth in the MSA. For the reasons stated below, we affirm.

Plaintiff discovered that defendant was having an affair and retained counsel to draft a MSA. Counsel forwarded the proposed MSA to defendant and notified him that he had the right to seek legal advice before executing the agreement. The MSA provided that plaintiff has sole legal custody of the couple's three children with defendant having parenting time on alternate weekends and when mutually agreed upon by the parties. The couple jointly owned and operated a marketing business from which defendant was to pay alimony to plaintiff.[1] Plaintiff would receive the marital home, including all equipment and valuable animals on the property, as well as the couple's retirement accounts and a joint brokerage account. Defendant received a car, and was responsible for the debt incurred in building an indoor

---

[1] Management of the business was in accordance with an Operation Agreement, which gave controlling power to plaintiff.

horse-riding arena, and the $300,000 remaining mortgage on the house.

Three days after receipt of the MSA, defendant signed it, without reading it or obtaining the advice of counsel. Approximately two months later, defendant received a complaint for divorce forwarded by plaintiff's counsel. Four days later, defendant signed a waiver of answer and consented to entry of a JOD, which incorporated the previously executed MSA. Again, defendant did not seek legal advice, despite being advised of his right to do so. Less than two months later, the JOD was filed on April 29, 2014.

Although divorced, the parties continued to live together for several months, took family vacations together, engaged in sexual relations, attended counseling, and operated their business. On the other hand, they began dating other people. About seven months after entry of the JOD, defendant moved out of the marital home and into the property's pool house. Three months later, in accordance with the MSA, defendant transferred the retirement accounts to plaintiff. Defendant moved out of the marital home four months thereafter.

Almost fifteen months after the JOD was entered, defendant filed a motion to vacate the JOD under Rule 4:50-1(c) and (f), and set aside the MSA. Defendant, however, points out that the motion

was filed within eight months after he received a gold sealed copy of the JOD. On November 2, 2015, the trial judge rendered an oral decision and issued an order denying the motion and the request for a plenary hearing on the validity of the MSA. The order directed the parties to mediate custody and parenting-time issues.

In his oral decision, the judge held the MSA was not an unenforceable mid-marriage agreement proscribed by Pacelli v. Pacelli, 319 N.J. Super. 185 (App. Div.), certif. denied, 161 N.J. 147 (1999), because the facts indicated plaintiff wanted a divorce when the MSA was forwarded to defendant. And although the judge found the MSA was "disproportion[ally]" favorable to plaintiff, he found it was enforceable under Glass v. Glass, 366 N.J. Super. 357, 379 (App. Div. 2004). The judge made note of the fact that defendant, despite being advised to do so, did not obtain legal counsel to review the MSA and the divorce complaint.

On appeal, defendant argues that the MSA should be set aside because plaintiff fraudulently induced him into signing it as a condition to saving their marriage after she discovered he was having an affair.[2] Defendant maintains that his motion to vacate

---

[2] After plaintiff subsequently filed a motion to enforce litigants' rights pursuant to the MSA, the trial court granted a stay pending appeal and ordered the parties to continue running the business as they had before.

the JOD was timely filed under Rule 4:50-2 after he received a sealed copy of the judgment, and that the JOD should be vacated because of the "exceptional and compelling circumstances" that compel modification of the unconscionable, inequitable and unjust MSA. We disagree.

Parties to a divorce proceeding may apply under Rule 4:50-1 to vacate an MSA. See Connor v. Connor, 254 N.J. Super. 591, 601 (App. Div. 1992). Subsection (c) of Rule 4:50-1 provides that a judgement may be vacated if it was obtained by "fraud . . . , misrepresentation, or other misconduct of an adverse party." Relief under subsection (c) must be sought within one year after the judgment was entered. Rule 4:50-2. Subsection (f) of Rule 4:50-1 is a catch-all provision that authorizes a court to relieve a party from a judgment or order for "any other reason justifying relief from the operation of the judgment or order." The essence of the subsection is to achieve equity and justice in exceptional situations that cannot be easily categorized. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 269-70 (2009) (citing Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). Therefore, in order for relief under the rule to be granted, the movant "must show that the enforcement of the order would be unjust, oppressive or inequitable." Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App.

Div. 1971). An application under subsection (f) must be sought within a reasonable time after entry of the judgment.

We review a court's determination of a Rule 4:50-1 motion to vacate under an abuse of discretion standard. U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). There is "an abuse of discretion when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Id. at 467-68 (internal quotation marks and citation omitted).

Initially, we address the timeliness of defendant's Rule 4:50-1 motion to vacate the JOD that was entered on April 29, 2014. Defendant's application under subsection (c) fifteen months after entry of the JOD is beyond the one-year time limit. We find no merit to defendant's contention that his filing was timely because it was filed eight months after he obtained a gold sealed copy of the JOD. He was well aware of the JOD well before receiving a gold sealed copy because the judgment was entered two months after he consented to its entry by waiving his right to answer the divorce complaint. As for defendant's application to vacate the JOD under subsection (f), we cannot conclude its filing fifteen months after entry of the JOD was unreasonable. Nonetheless, we address the merits of defendant's contentions under both subsection (c) and (f) of Rule 4:50-1.

A-1543-15T4

Defendant seeks to vacate the JOD by attacking the validity of the MSA, an essential part of the judgment. To determine whether the parties reached a binding MSA, this court must consider "whether there was sufficient credible evidence to support the trial court's finding." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342 (2010). Due to the special expertise in family matters, we must "defer to the [family] court's determinations 'when supported by adequate, substantial, credible evidence.'" New Jersey Div. of Child Prot. & Permanency v. Y.A., 437 N.J. Super. 541, 546 (App. Div. 2014) (citing N.J. Div. of Youth & Family Servs. v. I.Y.A., 400 N.J. Super. 77, 89 (App. Div. 2008) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998))).

Generally, mid-marriage agreements are unenforceable as they are "inherently coercive," entered into "before [a] marriage los[es] all of its vitality and when at least one of the parties, without reservation, wanted the marriage to survive." Pacelli, supra, 319 N.J. Super. at 190-91. The public policy supporting enforcement of a pre-nuptial, as opposed to a post-nuptial, agreement is that one party remains free to walk away before the marriage takes place. So too, property settlement agreements prepared in contemplation of divorce are enforceable as they assume the parties stand in adversarial positions and negotiate in their own self-interest. Id. at 189-90, 195. Examination of the

7

enforceability of the MSA must independently turn on whether defendant can successfully prove his acceptance was procured by fraud, overreaching, duress, or coercion. Rogers v. Gordon, 404 N.J. Super. 213, 219 (App. Div. 2008).

Under these guidelines, we see no reason to disturb the trial court's ruling that the MSA was not a mid-marriage agreement and should be enforced. The court's finding that plaintiff did not deceive defendant to get him to execute the MSA is supported by the record. No facts support defendant's argument that he executed the agreement as a condition imposed by plaintiff to continue their marriage. There is no credible evidence that the parties intended to continue their marriage when the MSA was reached. The mere fact that, for a short while after entry of the JOD, they continued to live together, had sexual relations, and took family vacations, does not demonstrate they intended to remain married when the MSA was executed. The parties' decision to continue to run their business after execution of the MSA was not an indication that they intended to remain married, but was necessary to maintain their post-separation financial stability. The fact that after the JOD was entered, they dated other individuals, and that defendant moved into the pool house before eventually leaving the marital home altogether, further supports the court's ruling that the MSA is enforceable. In addition, defendant's transfer of the

retirement accounts to plaintiff under the MSA, belies his contention that the MSA should be invalidated.

Finally, defendant's assertion that he was deceived or forced to execute an unfair or unconscionable MSA, is undermined by his failure to seek legal advice before executing both the MSA and the waiver to answer the divorce complaint, despite being advised that he had the right to do so. The credibility of defendant's position is furthered weakened by his admission that he chose not to read the MSA.

Given our determination that the MSA is not a mid-marriage agreement and should be enforced, we need not address defendant's remaining arguments to obtain a plenary hearing and to modify custody and parenting time.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION