**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2245-17T2

MARCUS TAYLOR,

    Plaintiff-Appellant,

v.

THE RICHARD STOCKTON
COLLEGE OF NEW JERSEY,

    Defendant-Respondent.

_____

Argued February 25, 2019 – Decided March 11, 2019

Before Judges Sabatino, Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0341-14.

Justin T. Loughry argued the cause for appellant (Loughry and Lindsay, LLC, attorneys; Justin T. Loughry, on the briefs).

James M. Duttera, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christie Pazdzierski, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Marcus Taylor appeals from the Law Division's December 8, 2017 order denying his motion to vacate the court's October 19, 2016 order granting summary judgment in favor of defendant The Richard Stockton College of New Jersey (Stockton), and dismissing his complaint alleging a failure to accommodate his alleged disability, and improper retaliation in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.  We affirm.

Plaintiff began working at Stockton as a police officer in August 2005. On October 4, 2011, he responded to a fatal motor vehicle accident.  Plaintiff alleged that the victim died, "as far as [he] could detect, while [he] []held him[] while [he] was in physical contact with him[.]"  As a result of this incident, plaintiff asserted he developed Post-Traumatic Stress Disorder (PTSD).

In January 2012, plaintiff told his supervisor, Lieutenant Britton, that he was having difficulty as a result of witnessing the aftermath of the accident. Plaintiff admitted that the lieutenant "quickly referred" him to the Cop2Cop peer counseling program so he could speak to other law enforcement officers who had experienced similar situations.  Lieutenant Britton also told plaintiff he could see a counselor and that these services would be covered by his health insurance.

A-2245-17T2

Plaintiff testified in a related proceeding that he had a "good" experience in the Cop2Cop program and, when he later asked to see a counselor, Lieutenant Britton immediately contacted the Stockton Human Resources Department to make the arrangements. However, plaintiff did not keep the appointment with the counselor. At first, plaintiff claimed he was unable to do so because he was working the midnight shift and needed to sleep during the day. However, he ultimately admitted that he was not even at work on the day of the scheduled appointment.

Plaintiff later alleged that over the course of the next year, he saw a therapist whose name he could not remember, as well as a licensed clinical social worker (LCSW). However, the LCSW told Stockton that plaintiff only kept one scheduled appointment during that entire period.

On January 24, 2012, plaintiff submitted a letter to Stockton from a doctor. The letter stated:

> Due to his diagnosis of [PTSD,] I am recommending that [plaintiff] be put on day shift for the next 30 days. At that time he will be re-evautated [sic], and I will have further recommendations.

In response, Stockton moved plaintiff from his regular midnight shift to the day shift. Plaintiff remained on the day shift from January 25 to February 24, 2012, the full thirty-day period recommended by his doctor.

3

At that end of the thirty days, plaintiff did not submit another doctor's note, and there is no evidence in the record that the doctor ever re-evaluated him as he stated he would in the January 24 letter. Nevertheless, Lieutenant Britton asked plaintiff if he would like to continue on the day shift for another thirty days and, when he replied that he would, Stockton allowed him to remain on the day shift through April 1, 2012. Thereafter, plaintiff did not ask to continue on the day shift and, as stated above, his doctor made no further recommendations. Therefore, plaintiff returned to his former assignment on the midnight shift.[1]

---

[1] In his responses to interrogatories, plaintiff admitted that the only request he ever made for an accommodation was to be placed on the day shift for thirty days. He also acknowledged that Stockton permitted him to remain in this assignment twice as long as his doctor had recommended.

Nevertheless, in a certification he submitted in support of his motion to vacate the October 19, 2016 judgment, plaintiff claimed for the first time that he also asked to be placed on desk duty. However, plaintiff's doctor had only recommended a brief transfer to the day shift, and plaintiff presented no additional medical documentation in connection with this new allegation. He also failed to explain why he did not raise this contention in his complaint or his answers to interrogatories. Under these circumstances, we treat plaintiff's subsequent certification for what it was, a "sham affidavit" that contradicted his earlier certified statements. See Shelcusky v. Garjulio, 172 N.J. 185, 193-94 (2002) (noting that the sham affidavit "doctrine calls for rejection of the affidavit where[, as here,] the contradiction is unexplained and unqualified by the affiant. In such circumstances, the alleged factual issue in dispute can be perceived as a sham, and as such it is not an impediment to a grant of summary judgment."

4

Plaintiff presented no further information to Stockton concerning his alleged medical condition, and the record does not reflect that plaintiff had any further difficulty in performing his assignments.

On March 13, 2013, the federal Drug Enforcement Administration (DEA) arrested defendant on drug trafficking charges following an undercover investigation it conducted between November 2012 and January 2013. The investigation revealed that on five occasions during this period, plaintiff sold oxycodone to a DEA agent and a cooperating witness working with the DEA. Following his arrest, Stockton suspended plaintiff without pay pending the outcome of the criminal charges. Stockton also sought to remove plaintiff from employment for conduct unbecoming a public employee, and other related charges. Thirteen months later, on April 14, 2014, plaintiff submitted a letter of resignation to Stockton.

On July 3, 2014, plaintiff pled guilty to distribution and possession with intent to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). At his sentencing hearing, plaintiff claimed that Stockton failed to accommodate his disability and that was the reason he began using and selling Oxycodone. The federal district court judge soundly rejected this contention, and stated that plaintiff's testimony was not credible and, indeed, "was an affront

to the judicial system."  The judge also remarked that "[a] police officer who swears to tell the truth, to uphold the law, who gets on this stand and flat-out lies is an affront to the [c]ourt's integrity."  The judge sentenced plaintiff to thirty-one months in prison.

On January 28, 2014, plaintiff filed a pro se complaint against Stockton, and alleged that his employer violated the LAD by failing to accommodate his disability.  In February 2015, plaintiff amended his complaint to include a claim that Stockton retaliated against him because he sought an accommodation.

After taking some discovery, Stockton filed a motion for summary judgment on September 15, 2016.  Stockton asserted that it granted plaintiff the exact accommodation he sought by placing him on the day shift for thirty days as his doctor requested, and it extended that assignment for an additional thirty days even though plaintiff did not request the extension or submit any follow-up evaluations or recommendations from his doctor.

In addition, Stockton pointed out that plaintiff suffered no adverse employment consequences since he simply continued in his normal assignment without any change in his pay or other employment condition.  As an alternative basis for the relief it sought, Stockton also posited that plaintiff should be collaterally estopped from presenting his claim that it failed to accommodate his

disability based on the federal judge's conclusion that plaintiff's assertion was in no way credible.

The motion, which Stockton properly served upon plaintiff, was returnable on October 14, 2016. Plaintiff failed to respond to the motion. As a result, the trial court granted Stockton's motion for summary judgment and dismissed plaintiff's complaint with prejudice in an order filed on October 19, 2016.

Almost a full year later, on October 6, 2017, plaintiff filed a motion to vacate the October 19, 2016 judgment. He was now represented by an attorney. In a supporting certification, plaintiff admitted that he received an envelope from Stockton containing the motion for summary judgment, but he never opened it.

Plaintiff claimed that "[i]n or about the later summer and early fall of 2016," he "was consulting with an attorney . . . to ask that he consider taking over [his] case." He put all of his papers concerning the case, including the envelope he received from Stockton, in a box and took it to this attorney. Plaintiff, who did not submit a certification from this attorney in support of the motion, claimed the attorney told him "that he was very busy and it would take him a little bit of time to get to the review." Again unable to specify the date on

7

which anything happened, plaintiff asserted that "around mid to late October," the attorney returned the material to him and stated he would not be able to represent plaintiff.

Plaintiff claimed that "[i]n or about late October or early November, 2016," he called Stockton's attorney to ask to adjourn an upcoming deposition. The attorney told plaintiff that the matter had been dismissed.

Plaintiff alleged that he then took his file to a different attorney, who "opened all the packages and found the summary judg[]ment papers[.]" He did not explain why, if these assertions were true, the attorney did not simply file a notice of appeal from the October 19, 2016 judgment or an immediate motion to vacate it under Rule 4:50-1. Plaintiff did not even divulge the date on which he formally retained this attorney.

Plaintiff also submitted a certification from his new attorney, but it is also vague. In the certification, the attorney stated that plaintiff "came to [him] in or about November 2016 to report . . . that his case appeared to have been dismissed." The attorney never states that plaintiff retained him at that time. Instead, the attorney asserted that he "undertook to review the extensive motion to attempt to determine whether [plaintiff] might meet the standards for relief for vacation of judgment." This review, the attorney stated, took eleven months

to complete "[i]n light of [his] other case commitments including trials and pretrial hearings, appellate briefs and arguments, discovery depositions and de bene esse depositions, and the like."

On December 8, 2017, Judge Daniel Bernardin denied plaintiff's motion to vacate the judgment dismissing his complaint with prejudice. In an oral decision, the judge noted that plaintiff sought to vacate the judgment under Rule 4:50-1(a), which permits a court to grant relief from a judgment if the moving party demonstrates "excusable neglect."

Based upon the facts set forth above, the judge concluded that plaintiff's abject neglect in failing to: (1) open the mail containing Stockton's summary judgment motion; (2) respond to it in a timely fashion; or (3) take any steps to address the situation in the eleven months that followed, was clearly not "excusable." The judge explained:

> Plaintiff's neglect is not excusable, and plaintiff is not blameless. His failure to open or review paper[s] sent to him in this litigation is not excusable neglect. It's just neglect. In order to prevail on the motion plaintiff must show that [his] neglect in failing to oppose the motion was excusable. Here, plaintiff acknowledges in his moving papers that he received [Stockton's] motion, but never opened the papers or reviewed them. . . . In this case, plaintiff should have opened the envelope that he acknowledges having received, which contained [Stockton's] summary judgment motion. Plaintiff should have read the motion. His failure to do so was careless. It

demonstrates a lack of proper diligence, a disengagement from the litigation, rather than neglect, which is [not in] any way excusable.

The judge further stated that even though plaintiff was representing himself in the litigation, he had the duty to respond to a motion he admittedly received. The judge also noted that plaintiff did not retain the first attorney he allegedly spoke to, and did not even submit a certification from this individual. Thus, plaintiff could not transfer blame to that attorney, or to the second one he went to, who did not certify as to the date plaintiff retained him, or adequately explain why it took eleven months to file the Rule 4:50-1(a) motion.

The judge also found that, in any event, plaintiff did not have a meritorious claim against Stockton under the LAD. While the judge agreed with plaintiff that he was not collaterally estopped from pursuing his complaint by the federal judge's comments about his utter lack of credibility, "the record [nevertheless] reflect[ed] that Stockton gave plaintiff the help and put him on the right path." Therefore, there was simply no basis for plaintiff's contention that Stockton did not accommodate his disability and, instead, retaliated against him for advising his employer that he would like to be moved to the day shift for thirty days. This appeal followed.

On appeal, plaintiff argues that the judge erred by denying his motion to vacate the judgment dismissing his complaint. We disagree.

Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (internal quotation marks omitted) (quoting Mancini v. EDS, 132 N.J. 330, 334 (1993)). However, relief from judgment under Rule 4:50-1 "is not to be granted lightly." Cho Hung Bank v. Kim, 361 N.J. Super. 331, 336 (App. Div. 2003). Rather, Rule 4:50-1 "provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." Ross v. Rupert, 384 N.J. Super. 1, 8 (App. Div. 2006) (internal quotation marks omitted) (quoting Baumann v. Marinaro, 95 N.J. 380, 393 (1984)).

Accordingly, a "trial court's determination under [Rule 4:50-1] warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." Guillaume, 209 N.J. at 467. A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

11

Plaintiff did not meet that demanding standard here. He brought his motion to vacate the order dismissing his complaint under Rule 4:50-1(a), which permits a court to grant relief from a final judgment if the moving party can demonstrate that the entry of the judgment was attributable to "excusable neglect," which has been long-defined as "'an honest mistake that is compatible with due diligence or reasonable prudence.'" Id. at 468 (quoting Mancini, 132 N.J. at 335). Here, plaintiff did not come close to making this required demonstration. Plaintiff admitted that he received the envelope containing Stockton's motion for summary judgment, and decided not to open it. Instead, he put it in a box and ignored it. Simply stated, there is nothing "excusable" about plaintiff's gross neglect in this case.

In so ruling, we are mindful that plaintiff initially was representing himself in this action. However, "pro se litigants are not entitled to greater rights than litigants who are represented by counsel." Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014). Plaintiff is also unable to shift the blame for his neglect to the two attorneys who he states reviewed his file. Plaintiff never retained the first attorney, and it is not clear when he retained the second, who was not even able to specifically document when plaintiff first contacted him.

While plaintiff brought the Rule 4:50-1(a) motion just before the one-year time limit for such motions expired under Rule 4:50-2, it still took him eleven months to address his failure to respond to Stockton's motion for summary judgment. As already noted, there was no persuasive explanation proffered for this long delay and, as the judge found, Stockton was clearly prejudiced in view of the fact that over five years had already passed between the time plaintiff first sought an accommodation for his alleged disability and his motion for relief from the judgment of dismissal. Under these circumstances, we discern no abuse of discretion by the judge in determining that plaintiff's Rule 4:50-1(a) lacked merit. See Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 195 (App. Div. 1985) (stating that in considering a motion brought under this Rule, the trial court should weigh "(1) the extent of the delay, (2) the underlying reason or cause, (3) the fault . . . of the litigant, and (4) the prejudice that would accrue to the other party").

Our determination on this point is further bolstered by our conclusion that the judge correctly found that plaintiff's complaint did not set forth a meritorious claim against Stockton under the LAD for either a failure to accommodate his disability or for retaliating against him for request an accommodation. Marder v. Realty Constr. Co., 84 N.J. Super. 313, 318 (App. Div.), aff'd, 43 N.J. 508

13

(1964); see also Guillaume, 209 N.J. at 469 (noting that court's should examine the movant's chance of success on the merits to ensure that "[t]he time of the courts, counsel and litigants [will not] not be taken up by . . . a futile proceeding") (quoting Schulwitz v. Shuster, 27 N.J. Super. 554, 561 (App. Div. 1953)).

To establish a prima facie case of failure to accommodate, a plaintiff must demonstrate:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.
>
> [Victor v. State, 203 N.J. 383, 415 (2010) (internal quotation marks omitted) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317-18 (3d Cir. 1999)).]

An employee need not place a request for a reasonable accommodation in writing, or even use the phrase "reasonable accommodation." Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J. Super. 385, 400 (App. Div. 2002). However, the employee must make clear that assistance is desired. Ibid. Once such a request is made, "the employer must initiate an informal interactive process with the employee," to identify possible reasonable accommodations

14

that could be implemented "to overcome the employee's precise limitations resulting from the disability." Ibid. The employer must make a "reasonable effort to determine the appropriate accommodations." Ibid.

Stockton clearly met these requirements, and it followed through with every accommodation request plaintiff made. As soon as plaintiff notified his supervisor that he allegedly suffered from PTSD, she arranged for him to participate in the Cop2Cop peer counseling program and, by contacting the Human Resources Department, also put plaintiff in contact with a counselor. Plaintiff did not take advantage of the individual counseling that Stockton offered, and lied about the reason why he missed the scheduled session. After seeing a LCSW once after that, he never returned for any of the follow-up sessions.

Stockton also moved plaintiff to the day shift as soon as his doctor requested the thirty-day transfer, and allowed plaintiff to remain on that shift twice as long as the doctor recommended. Plaintiff never sought an extension of this sixty-day period, never presented a new doctor's note and, as evidenced by his answers to interrogatories, never asked for any additional accommodation. Thus, plaintiff's failure to accommodate argument clearly lacked merit.

We reach a similar conclusion as to plaintiff's claim that Stockton retaliated against him for seeking an accommodation. The LAD bans "reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint" to enforce "any right granted or protected by this act." N.J.S.A. 10:5-12(d). To claim retaliation in violation of the LAD, employees must show that "(1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation." Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 629-30 (1995). Upon the assertion of a legitimate non-retaliatory reason for the adverse action by the employer, a plaintiff must show, by a preponderance of the evidence, that the employer's conduct was nonetheless motivated by discriminatory reasons. Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 549 (App. Div. 1995).

Applying these principles, we detect no basis in this record to support plaintiff's reprisal claim. Plaintiff argues that Stockton returned him to his former midnight shift to punish him for asking for an accommodation. However, Stockton moved plaintiff to the day shift immediately after his doctor requested this action, and allowed him to remain in this assignment for sixty days. It only

returned plaintiff to his former assignment on the midnight shift after plaintiff failed to submit any further recommendations from his doctor that he should continue on the day shift.

As already noted, plaintiff's new claim that he really wanted to be put on desk duty, rather than on the day shift, lacks merit. Plaintiff's doctor never made that request, and plaintiff admitted in his answers to Stockton's interrogatories that the only accommodation he ever sought was a thirty-day assignment to the day shift. Stockton fully complied with that request and, therefore, plaintiff clearly failed to demonstrate that he had a meritorious claim on this point.[2]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In light of our analysis, we need not address the College's alternative argument that plaintiff was collaterally estopped by the federal sentencing judge's findings from arguing a failure of reasonable accommodation in the State court civil LAD case.