**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2359-24

US BANK TRUST NATIONAL
ASSOCIATION, not in its individual
capacity but solely as owner Trustee
for VRMTG ASSET TRUST,

    Plaintiff-Respondent,

v.

BINYOMIN RABINOWITZ,

    Defendant-Appellant,

and

MRS. RABINOWITZ, spouse of
BINYOMIN RABINOWITZ, POINT
BAY FUEL INC., and AMERICAN
EXPRESS BANK, FSB,

    Defendants.

_____

Argued April 28, 2026 – Decided June 18, 2026

Before Judges Gooden Brown and Rosero.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-008762-23.

Steven W. Griegel argued the cause for appellant (Roselli Griegel Lozier, PC, attorneys; Steven W. Griegel, on the brief).

Quenten E. Gilliam argued the cause for respondent (Friedman Vartolo LLP, attorneys; Quenten E. Gilliam, of counsel and on the brief).

PER CURIAM

In this foreclosure action, defendant Binyomin[1] Rabinowitz appeals from Chancery Division orders dated January 27 and April 2, 2025, denying his Rule 4:50-1 motions to vacate a default judgment and denying reconsideration in favor of plaintiff US Bank Trust National Association, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust (VRMTG). Defendant also appeals the initial December 2, 2024 default judgment. We affirm.

I.

We glean these facts from the record. On July 11, 2007, defendant executed a mortgage note for $260,000 in favor of Fairmont Funding, LTD,

---

[1] Throughout the record, defendant's name is spelled both "Binyon" and "Binyomin."

secured by leased property located in Howell. The mortgage was recorded in the Monmouth County Clerk's Office on July 25, 2007.

Numerous assignments took place between 2011 and 2019. Mortgage Electronic Registration Systems, Inc., as nominee for Fairmont, assigned the mortgage to GMAC Mortgage, LLC (GMAC), on November 8, 2011, which assignment was recorded on December 16, 2011. GMAC then assigned the mortgage to Ocwen Loan Servicing, LLC (Ocwen), on April 26, 2013, which assignment was recorded on May 13, 2013. Ocwen's successor by merger, PHH Mortgage Corporation, ultimately assigned the mortgage to Select Portfolio Servicing, Inc. (SPS) on July 2, 2019, which assignment was recorded on July 18, 2019.[2]

On or about July 20, 2021, defendant entered into a payment deferral agreement whereby monthly payments of principal, interest, and other amounts totaling $24,213.85 were deferred until the maturity or pay off of the loan. Defendant then failed to make his January 1, 2022 mortgage payment. Subsequently, defendant submitted an application to SPS for a loss mitigation

---

[2] Prior to the assignment, defendant executed a loan modification agreement with Ocwen on March 12, 2018. The agreement established the principal amount due as $315,927.49, reduced the per annum interest rate to 4%, and extended the maturity date of the mortgage loan to December 1, 2057.

3

program and, in a letter dated December 7, 2022, was informed he was "[a]pproved for a Trial Period Plan to [m]odify [his m]ortgage [p]ayment."

The terms of the Trial Period Plan required defendant "to make three monthly payments in the amount of $1,861.46." The letter further stated if defendant "follow[ed] the terms of the [T]rial [P]eriod [P]lan, [his] mortgage [would] be permanently modified." The modification would establish the principal amount due as $351,455.91 and retain the current interest rate of 4%, fixed for forty years from the date the modification was effective.

The letter outlined three steps for defendant to take to complete the plan: first, to "suspend foreclosure proceedings," defendant was required to contact SPS by January 1, 2023, "to indicate [his] intent to accept th[e] offer"; second, to "[a]ccept [t]h[e] offer," defendant was required to make the first Trial Period Plan payment by January 1, 2023; third, to "successfully complete the Trial Period Plan," defendant was required to make the second payment by February 1, 2023, and the third payment by March 1, 2023.

The letter further informed defendant:

> Once you have successfully made each of the payments above by the respective due dates, you have submitted the required signed copies of your modification agreement, you otherwise remain eligible for the modification, and we have signed the modification agreement, your mortgage will be permanently

4

modified in accordance with the terms of your modification agreement.

. . . [SPS] must receive each payment in the month in which it is due. If you miss a payment or do not fulfill any other terms of your Trial Period Plan, this offer will end and your mortgage loan will not be modified.

[(Emphasis omitted.)]

SPS also "reserve[d] the right to revoke th[e] offer or terminate the plan following [defendant's] acceptance if [SPS] learn[ed] of information that would make [him] ineligible for the Trial Period Plan," and specified that all other "terms of [defendant's] existing note and all mortgage requirements remain[ed] in effect and unchanged during the Trial Period Plan."

Defendant made the first three payments of the Trial Period Plan and was approved for a final loan modification on March 27, 2023. In a letter dated April 21, 2023, SPS notified defendant the loan modification would not be effectuated unless he returned the signed modification documents. The letter informed defendant:

As of the date of this letter we have not yet received back your signed modification agreement. It is a requirement that a signed modification agreement be received. If we do not receive your signed modification agreement by 05/05/2023[,] we will consider this as your non-acceptance of the modification and we will close out your request. This means your loan terms will revert . . . to the terms prior to the [m]odification. IT

5

IS IMPERATIVE THAT YOU RETURN THE SIGNED MODIFICATION DOCUMENTS IMMEDIATELY. Failure to return the signed agreement by the date specified will result in your loss of your affordable payment[] and could result in your account being referred for future legal action.

A second letter was sent on May 11, 2023, informing defendant that his request for loss mitigation assistance was considered "withdrawn," because he failed to "accept the offer . . . by the established deadline."

In late July 2023, SPS filed a foreclosure complaint against defendant. After numerous attempts to serve defendant personally, on August 10, 2023, SPS served defendant with the summons and complaint via publication in the Asbury Park Press. See R. 4:4-5(a)(3) (governing service by publication of notice to absent defendants). SPS also mailed defendant the publication notice along with mediation documents.[3]

Defendant failed to answer the complaint or timely appear within thirty-five days after publication. See R. 4:6-1(a). SPS requested default on November 3, 2023, which was ultimately entered. See R. 4:43-1. On December 20, 2023,

---

[3] Although defendant did not apply for the mediation program, described by plaintiff as an opportunity for "the parties [to] explore loss mitigation with the assistance of a court-appointed mediator," plaintiff reviewed defendant's case and informed defendant in a letter dated December 18, 2024, that defendant's request could not be processed for insufficient documentation.

SPS assigned the note and mortgage to VRMTG, which assignment was recorded on January 4, 2024.[4]

In January 2024, plaintiff moved for final judgment by default. See R. 4:43-2; R. 4:64-1. In an attached certification, plaintiff requested final judgment be entered "notwithstanding the deferral agreement not being recited in the complaint." The motion was unopposed. In a February 16, 2024 order, the motion was denied for failure to reference the deferral agreement. The complaint was never amended.

On July 17, 2024, counsel filed a notice of appearance on behalf of defendant. Four months later, on November 7, 2024, plaintiff again filed a motion for final judgment and served it on defense counsel. The motion was unopposed and a final judgment in the amount of $354,225.06 plus interest, fees, and costs was entered in an order dated December 2, 2024.

On December 17, 2024, new counsel for defendant simultaneously filed a notice of motion to vacate the final judgment and for reconsideration.[5] Defendant's supporting certification asserted he was improperly served; plaintiff obstructed his ability to receive a loan modification, the proof of which was

---

[4] VRMTG was substituted as plaintiff in a March 22, 2024 order.

[5] New counsel was substituted in a motion filed the same day.

found on a loan portal that defendant was prevented from accessing once plaintiff switched servicers; plaintiff took actions "which made it impossible for [defendant] to find a tenant" for the subject property, such as locking defendant out of the property, cutting power lines, and allowing the property "to be subject to unpaid violations"; and plaintiff failed to amend its complaint in compliance with the previous court order before seeking final judgment.

After hearing argument on January 27, 2025, the judge entered an order on the record that was later memorialized, denying defendant's motions.[6] In his decision, the judge explained there were no "facts and/or law that [were] overlooked or misapprehended by the court"; defendant failed to append an answer to his motion as required by Rule 4:50-1; service was proper and defendant did not assert "he was unaware" of the action; and defendant provided no theory why the failure to amend the complaint impacted plaintiff's "right to foreclose" on the property.

In rejecting defendant's allegation of unclean hands on the part of plaintiff, the judge pointed out that under the terms of the mortgage agreement, plaintiff had the "power to safeguard the property by taking reasonable and appropriate

_____

[6] The order incorrectly stated plaintiff's motion was denied.

8

actions."[7]  Regarding defendant's claim that plaintiff obstructed his efforts to seek a loan modification, the judge stated "[a] desire for a loan modification is not a defense," and, in any event, defendant did not complete the process. Moreover, citing U.S. Bank National Association v. Curcio, 444 N.J. Super. 94, 113 (App. Div. 2016), the judge noted "[d]ual tracking is not forbidden."  See ibid. (explaining dual tracking, "the practice of a mortgagor initiating foreclosure proceedings while also negotiating a mortgage modification," is "lawful in New Jersey").

The judge concluded:

> The final point here, again, defendant had counsel appear in July.  That lawyer did nothing.  No motion to vacate then, which was well prior to the default judgment.  Rather, six months went by before doing anything in this litigation.  This seems to be like a delay tactic, which weighs heavily in the equitable analysis on this motion to vacate.
>
> It would be patently unfair to require . . . plaintiff to continue to carry the costs on this property, defendant to remain in default on payments while . . . defendant, represented then by counsel and now by counsel, sat on their hands for six months.  It's inequitable, to say the least.

---

[7]  Section 9 of the mortgage, entitled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument," permits the lender to do whatever is reasonable to protect its security interest in the event of a default, including changing locks, draining water from pipes, disconnecting utilities, and eliminating building or other code violations.

On February 26, 2025, defendant again filed a notice of motion to vacate the final judgment and for reconsideration, appending a proposed answer. Defendant's supporting certification reiterated the claims asserted in the previous certification and alleged for the first time that he had accepted the loan modification contract and plaintiff's cancellation constituted a breach. The answer asserted thirteen affirmative defenses and counterclaims alleging violations of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -226, common law fraudulent and negligent misrepresentation, breach of contract and covenant of good faith and fair dealing, and promissory estoppel.

After hearing argument on April 2, 2025, the judge again denied defendant's motion on the record for failure to meet Rule 4:50-1's requirements. The judge incorporated his prior reasons for denying defendant's first motion. The judge found defendant failed to provide an explanation for not opposing the January and November 2024 motions for default judgment; failed to indicate how certain evidence was newly discovered; did not allege fraud; and provided no credible evidence service was defective or the judgment was void. The judge added there were no exceptional circumstances to justify granting relief.

A-2359-24

Critically, the judge explained defendant failed to present a meritorious defense as he defaulted on the mortgage and failed to sign the loan modification documents. The judge concluded:

> [N]one of [Rule 4:50-1's] six subsections fit here because we have a defendant whose actions were not compatible with an honest mistake, not compatible with due diligence, not compatible with reasonable prudence, nor is there anything exceptional about someone not taking action, despite having a lawyer, prior to the judgment th[e]n thereafter trying to reopen, which seems to me to be sort of a kitchen sink approach, seeming to delay where the mortgage has not been paid for a period of time.

The judge memorialized his decision in an April 2, 2025 order, and this appeal followed.[8]

On appeal, defendant argues the judge should have granted his motion for reconsideration as plaintiff's failure to amend the complaint in compliance with the February 16, 2024 order rendered the final judgment improperly granted. Defendant also asserts he was locked out of the loan portal while the foreclosure litigation was ongoing and was denied the ability to obtain communications to prove his substantive allegations.

---

[8] Defendant's motion to stay a Sheriff's sale scheduled for June 9, 2025, was denied.

Alternatively, defendant argues the final judgment should have been vacated under Rule 4:50-1 because "the [c]omplaint filed by . . . plaintiff was patently insufficient to support a judgment by default." Defendant also alleges "a pattern of bad faith actions" by plaintiff, namely, ignoring defendant's attempts to cure the default on the loan, defrauding defendant by cancelling the loan modification, and failing to provide proper service.

II.

"Our Rules prescribe a two-step default process, and there is a significant difference between the burdens imposed at each stage." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 466 (2012). "When nothing more than an entry of default pursuant to Rule 4:43-1 has occurred, relief from that default may be granted on a showing of good cause." Guillaume, 209 N.J. at 466-67 (citing R. 4:43-3). "When the matter has proceeded to the second stage and the court has entered a default judgment pursuant to Rule 4:43-2, the party seeking to vacate the judgment must meet the standard of Rule 4:50-1." Guillaume, 209 N.J. at 467.

In pertinent part, Rule 4:50-1 permits a court to vacate a final judgment on the following grounds:

> (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence . . . ; (c) fraud

A-2359-24

. . . ; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged . . . ; or (f) any other reason justifying relief from the operation of the judgment . . . .

[R. 4:50-1.]

Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Guillaume, 209 N.J. at 467 (quoting Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993)) (internal quotation marks omitted). "Regardless of the basis, vacation of a judgment under Rule 4:50-1 should be granted sparingly." In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002).

"The trial court's determination under the rule warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion." Guillaume, 209 N.J. at 467. "An abuse of discretion arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Kornbleuth v. Westover, 241 N.J. 289, 302 (2020) (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)) (internal quotation marks omitted).

We are satisfied the judge did not abuse his discretion in rejecting defendant's motion to vacate the final judgment as defendant failed to meet the appropriate standard. Defendant's argument that he was defrauded by SPS based on the denial of defendant's loan modification application is not supported by the evidence. Defendant does not contend he did not receive the April 21, 2023 letter informing him to return the signed loan modification documents to successfully complete the process. Nor does defendant contend he complied with the mandates of the letter. Defendant also fails to explain what information was located on the portal that would be essential to his claim, the contents of the communications "[t]he lender ignored," or how either impacted his ability to return the completed documentation.

We also reject defendant's argument he had accepted the offer to modify the mortgage. The December 7, 2022 letter from SPS clearly informed defendant his mortgage would be "permanently modified" only after he "successfully made each of the [Trial Period Plan] payments . . . by the respective due dates," "submitted the required signed copies of [the] modification agreement," "otherwise remain[ed] eligible for the modification," and SPS "signed the modification agreement." (Emphasis added). Defendant does not assert he submitted the required signed copies of the modification

agreement or that SPS signed the agreement, as is clearly mandated by the terms of the agreement.

Further, we reject the contention the judgment was somehow void or invalid. See R. 4:50-1(d). A "void judgment" is "[a] judgment that has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected. . . . From its inception, a void judgment continues to be absolutely null." Gobe Media Grp., LLC v. Cisneros, 403 N.J. Super. 574, 577 n.1 (App. Div. 2008) (alteration and omission in original) (quoting Black's Law Dictionary 861 (8th ed. 2004)). Defendant does not dispute he was in arrears in his mortgage or that plaintiff was entitled to foreclose. See Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952) (explaining a party need only present three elements to establish a prima facie right to foreclose: "the execution, recording, and non-payment of the mortgage").

Additionally, Rule 4:50-1(f) does not justify vacating the judgment. Subsection (f) permits a judge to vacate a judgment for "any other reason justifying relief from the operation of the judgment or order," and "is available only when 'truly exceptional circumstances are present.'" Guillaume, 209 N.J. at 484 (first quoting R. 4:50-1; then quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 286 (1994)). The applicability of this subsection is limited to

15

"situations in which, were it not applied, a grave injustice would occur." <u>Ibid.</u> (quoting <u>Little</u>, 135 N.J. at 289). Defendant has not indicated he made any payments beyond the last Trial Period Plan payment. On this record, defendant has not shown "exceptional circumstances" to warrant relief under subsection (f), or any other section of the rule.

Similarly, the judge did not abuse his discretion in rejecting defendant's motion for reconsideration. <u>Lee v. Brown</u>, 232 N.J. 114, 126 (2018) ("A motion for reconsideration . . . is a matter left to the trial court's sound discretion." (omission in original) (quoting <u>Guido v. Duane Morris LLP</u>, 202 N.J. 79, 87 (2010))). A party may move for reconsideration of a court's decision pursuant to <u>Rule</u> 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." <u>D'Atria</u>, 242 N.J. Super. at 401.

16

A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. . . . [It] is designed to seek review of an order based on the evidence before the court on the initial motion, not to serve as a vehicle to introduce new evidence in order to cure an inadequacy." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (citations omitted).

Applying these principles, we conclude the judge properly denied plaintiff's motion for reconsideration. The information defendant presented to the judge was not submitted in opposition to plaintiff's motion that led to the entry of the challenged default judgment because no opposition was filed. Although defendant could have filed opposition to the November 7, 2024 motion, he chose not to do so without any explanation, despite being represented by counsel at the time. Under these circumstances, the judge correctly denied plaintiff's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

17